**Mark STEPP, Anita Stepp, Agreeable Motors, Inc., Appellants,**

v.

**Beverly DUFFY, Kenneth Duffy, Appellees.**

No. 49A02–9410–CV–00589.

Court of Appeals of Indiana.

Aug. 7, 1995.

Rehearing Denied Oct. 24, 1995.

---

James C. Spencer, Indianapolis, for appellants.

Steven R. Hofer, John H. Kenney, Indianapolis, for appellees.

## OPINION

FRIEDLANDER, Judge.

Mark Stepp, Anita Stepp and Agreeable Motors, Inc. (Agreeable) appeal the trial court's judgment entered in favor of Beverly and Kenneth Duffy [the Duffys] which determined that the Stepps and Agreeable were jointly and severally liable to the Duffys for violating the Motor Vehicle Information and Cost Savings Act.[1] [Hereinafter referred to as the Federal Odometer Act].

We affirm the judgment but remand this cause to the trial court for recalculation of damages.

The facts most favorable to the judgment are that on April 20, 1992, the Duffys purchased a 1988 Buick LeSabre from Agreeable, an automobile dealership in Indianapolis. Mark and Anita were the principal shareholders of Agreeable. The Buick was a four-door model, and the odometer indicated a reading of 75,054 miles at the time of purchase. Duffy paid a total of $5,750 for the vehicle, including sales tax. Agreeable had purchased the Buick for $4,100 at an auction and Mark signed the purchase contract which listed the mileage as 114,326.

Kenneth and Mark were acquainted, as Kenneth had previously worked with Mark's father for nineteen years at a different car lot. Before purchasing the car, Mark informed Kenneth that it was a nice vehicle and that he had been driving it for a couple of months as his personal automobile. Kenneth informed Mark that he wanted a low-mileage automobile, and Mark explained that the Buick had 75,000 miles on it because it was previously driven by an executive who primarily traveled on interstates.

Kenneth purchased the Buick after Mark permitted him to test-drive the vehicle over the weekend. Kenneth borrowed the money to purchase the car from a credit union and made a lump-sum payment to Agreeable. Prior to receiving title, Kenneth painted the car and put two new tires on it, spending $317.

Agreeable presented title to the Duffys which was dated May 7, 1992. Anita signed on behalf of Agreeable as Secretary of the corporation, and the odometer statement provided in relevant part as follows:

"We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.... I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.... [Nothing checked]. Mileage (no tenths) 75,054."

*Record* at 130.

The title indicated that Doug DeWitt had sold the vehicle to Agreeable. The date of that sale was listed as February 13, 1992, with a mileage of 74,326. Kenneth contacted DeWitt because he was interested in the vehicle's maintenance history. DeWitt told Kenneth that the Buick had approximately 114,000 miles on it at the time he traded it at another Indianapolis car dealership. Kenneth immediately contacted Mark, and according to Kenneth's testimony, the following conversation ensued:

"So Mark says, 'Well, have your talked to anybody about this?' And I said, 'No.' He said, 'Have you contacted an attorney?' I said, 'No.' I said, 'Why?' He says, 'Well, because I've done this.' I said, 'You've done what?' He says, 'Well, I changed the speedometer.' Or, no, excuse me, he said—let me make sure. He said, 'Kenny I've done this.' And I said, 'Well, Mark, why didn't you tell me so?' He said, 'Well, because you would not have bought the car or you would have been mad at me.' "

*Record* at 134–35.

DeWitt testified that he purchased the car new in 1988 and had put nearly 115,000 miles

---

1. 15 U.S.C. § 1981 *et seq.* The Odometer Act has been repealed and is recodified at 49 U.S.C. §§ 32701–32711.

on it. The speedometer was functioning at all times, and DeWitt received $3500 for the Buick when he traded it in 1992. DeWitt also testified that he did not sign the certificate of title which was presented to the Duffys; nor did he execute a power of attorney on behalf of any of the defendants. Anita knew that DeWitt did not sign the power of attorney she used to obtain a duplicate certificate of title. As indicated above, the title verified that the Buick had only 75,054 miles and that DeWitt sold the car directly to Agreeable.

Anita testified that she prepared the contract for the Duffys. She drove the Buick every day for over a month as a personal vehicle, and noticed that the speedometer had broken during that time. Anita testified that she did not know whether the odometer had also broken and would not have noticed how many miles she drove the car prior to the sale. Anita's routine procedure in completing certificates of title was to have someone else look at the vehicle and tell her the mileage without checking it herself. Anita testified that she did, however, personally record the mileage from the Buick.

The Duffys filed a complaint for damages on November 20, 1992, against the Stepps and Agreeable alleging fraud, a violation of the Federal Odometer Act,[2] and a violation of the Indiana Deceptive Consumer Sales Act.[3] Following a bench trial on April 29, 1994, judgment was entered for the Duffys as follows:

"This cause came before the court for trial on April 29, 1994, all parties appearing personally and by counsel. This Court had personal jurisdiction over the parties by virtue of the filing of the complaint and service of summons herein; and further had subject matter jurisdiction over the issues raised herein. Evidence submitted and heard. Cause continued for the submission of evidence as to attorney's fees, which hearing was had on June 7, 1994.

Comes now the court and, having been duly advised in the premises, finds judgment for the plaintiffs and against the defendants jointly and severally under the Motor Vehicle Information and Cost Savings Act [15 U.S.C. § 1981 et seq.] which judgment is broken down as follows:

1. Statutory treble damages in favor of the plaintiffs in the amount of Seven Thousand Six Hundred Fifty Dollars ($7650.00).

2. Statutory attorney fees in the amount of Seven Thousand One Hundred Ninety–Four Dollars and Fifty–Four Cents ($7,194.54) to the plaintiffs' attorneys, Steven R. Hofer and John H. Kennedy.

3. Court costs in the amount of Fifty-five Dollars ($55.00).

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiffs recover of and from the defendants jointly and severally in the total sum of $14,844.55 on their complaint; the costs of this action are to be assessed against the defendants."

*Record* at 96–97.

The Stepps and Agreeable appeal and present the following issues which we have consolidated:

1. Did the trial court err in finding that the Stepps and Agreeable violated the Federal Odometer Act with intent to defraud?

2. Did the trial court err in finding Mark and Anita Stepp individually liable for damages?

3. Did the trial court err in finding Anita Stepp personally liable?

4. Did the trial court err in awarding damages to the Duffys?

5. Did the trial court err in awarding attorney fees to the Duffys?

1.

When determining whether sufficient evidence was presented to support the trial court's judgment, this court neither weighs the evidence nor judges the credibility of witnesses. *Don Medow Motors, Inc. v. Grauman* (1983), Ind.App., 446 N.E.2d 651; *Riverside Ins. Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796. We will consider only that

**2.** 15 U.S.C. §§ 1984, 1986.

**3.** Ind.Code 24–5–05–10(1), (2).

evidence and reasonable inferences therefrom most favorable to the verdict, and will affirm if the verdict is supported by substantial evidence of probative value. *Don Medow, supra; Royer v. Pryor* (1981), Ind.App., 427 N.E.2d 1112.

■■■ We begin our discussion with the relevant portions of the Federal Odometer Act:

"§ 1983. Devices causing odometer to register other than true mileage driven prohibited.

No person shall advertise for sale, sell, use, or install, or cause to be installed, any device which causes an odometer to register any mileage other than the true mileage driven. For purposes of this section, the true mileage driven by the vehicle is that mileage driven by the vehicle as registered by the odometer within the manufacturer's designed tolerance.

§ 1984. Change of mileage indicated on odometer prohibited.

No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent to change the number of miles indicated thereon.

§ 1985. Operation of motor vehicle with knowledge of disconnected or nonfunctional odometer prohibited.

No person shall, with intent to defraud, operate a motor vehicle on any street or highway knowing that the odometer of such vehicle is disconnected or nonfunctional.

§ 1986. Conspiracy to violate odometer requirements.

No person shall conspire with any other person to violate section 1983, 1984, 1985, 1987, or 1988 of this title.

§ 1989(a). Civil actions to enforce liability for violations of odometer requirements; amount of damages; jurisdiction; period of limitation.

(a) Any person who, with intent to defraud, violates any requirement imposed under this title shall be liable in an amount equal to the sum of

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court."

Since 1972, the federal law has been designed to prohibit tampering with odometers on motor vehicles and to compensate persons victimized by the tampering. The language quoted above in the Federal Odometer Act demonstrates that diligence is required on behalf of the seller of an automobile to accurately disclose the reading on an odometer. There is an affirmative duty on automobile dealers to discover defects. *Haynes v. Manning,* 917 F.2d 450 (10th Cir.1990). The seller is required to provide written disclosure to the buyer of the cumulative mileage registered on the odometer or state that the actual mileage is unknown. *Bell Auto Sales, Inc. v. Jet, Inc.* (1993), Ind.App., 616 N.E.2d 770. Acting with reckless disregard for the truth when executing an odometer statement may subject the transferor to liability. *Id.*[4] When a cause of action is based on fraud for violation of the Federal Odometer Act, the plaintiff must prove such a violation by a preponderance of the evidence. *Haynes, supra.* Fraudulent intent may be inferred from an odometer discrepancy in the absence of any explanation. *Don Medow, supra.* In *Haynes,* the court observed as follows:

"If a person lacks knowledge that an odometer disclosure statement is false only because he displays a reckless disregard for the truth, a fact finder can reasonably infer that the violation was committed with an intent to defraud a purchaser."

*Id.* at 453.

■■■ At trial, Kenneth testified that he confronted Mark upon discovering the error

**4.** The majority of courts have concluded that reckless disregard is sufficient to prove intent to defraud. *See, e.g., Tusa v. Omaha Auto. Auction, Inc.,* 712 F.2d 1248 (8th Cir.1983); *Ryan v. Edwards,* 592 F.2d 756 (4th Cir.1979); *Nieto v. Pence,* 578 F.2d 640 (5th Cir.1978); *Aldridge v.*

*Billips,* 656 F.Supp. 975 (W.D.Va.1987); *Kantorczyk v. New Stanton Auto Auction, Inc.,* 433 F.Supp. 889 (W.D.Pa.1977); *Jones v. Fenton Ford, Inc.,* 427 F.Supp. 1328 (D.Conn.1977); *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381 (D.Neb.1977), *aff'd,* 578 F.2d 721 (8th Cir.1978).

in the odometer reading. Mark proceeded to explain that he did not tell Kenneth of the problem because he "would not have bought the car or ... would have been mad...." *Record* at 134–35. The Stepps claim that various circumstances surrounding the transaction rebutted the Duffys' allegation of fraudulent intent. Mark testified that when the speedometer broke on the Buick, he replaced it. The Stepps also offered evidence that the title to the Buick may have been lost during a burglary of the dealership, and that a dark vehicle of the same make and year with similar mileage was parked on Agreeable's lot.

While the Stepps offered these explanations in an attempt to negate the claim that they acted with fraudulent intent, the record before us is replete with evidence displaying their conscious and reckless disregard as to the accuracy of the true mileage of the Buick. The Stepps continued driving the Buick with a broken speedometer and did not give attention to the working condition of the odometer. Anita took advantage of a power of attorney which was never granted to her in applying for a duplicate title. The title represented an inaccurate odometer reading, and it erroneously stated that DeWitt had sold the Buick directly to Agreeable. The trial court, as the finder of fact, was also entitled to believe Kenneth's testimony regarding the statement Mark made to him indicating his awareness that the odometer reading was inaccurate.

The totality of the evidence supports the trial court's conclusion that the Stepps' conduct was fraudulent and in violation of the Federal Odometer Act. *See Don Medow, supra.*

### 2.

█ Contrary to the Stepps' contentions, the trial court did not err in finding Mark and Anita individually liable for damages. While a corporate officer or shareholder may not be held liable for acts by the corporation merely because he is an officer or shareholder, a corporate officer cannot escape liability for fraud by claiming that he acted on behalf of the corporation when the corporate officer personally participated in the fraud. *American Indep. Management Sys. v. McDaniel* (1982), Ind.App., 443 N.E.2d 98. In light of our disposition of issue one, *supra,* the trial court did not err in finding Anita and Mark personally liable for fraud.

### 3.

█ Agreeable next claims that the trial court erred in finding Anita personally liable because she was not a "transferor" as defined by 15 U.S.C. § 1988. This section provides in relevant part as follows:

"[a] Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

[1] Disclosure of the cumulative mileage registered on the odometer.

[2] Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled."

In *Cwiakala v. Economy Autos, Ltd.,* 587 F.Supp. 1462 (N.D.Ind.1984), the United States District Court for the Northern District of Indiana determined that the defendant, as president, general manager, and agent of Economy Autos, was not a transferor within the meaning of 15 U.S.C. § 1988. The court observed that:

"A transfer is defined by statute as a 'change [in] ownership by purchase, gift or any other means.' 15 U.S.C.A. § 1982[5]. In the implementing regulations, 'transferor' is defined as 'any person who transfers *his ownership* in a motor vehicle....' [emphasis added] 49 C.F.R. § 580.3. Hence, no liability can attach to White since he never had any ownership interest in the car in issue. *See* Affidavit of John C. White, Sr., filed September 9, 1983; Amended Affidavit of John C. White, Sr., filed on November 9, 1983. Irrespective of White's signature as seller, transferor, on the odometer statement transferred to plaintiff on January 17, 1980, the owner, and thus its transferor, was Economy Autos, Ltd. In accord with the weight of

authority, this Court concludes that White, as president, general manager and agent of Economy Autos was not liable under 15 U.S.C. § 1989. [Citations omitted]."

*Id.* at 1465 (emphasis in original).

As in *Cwiakala,* Anita was not a transferor as defined by the Federal Odometer Act. She signed the odometer disclosure rate as Secretary of Agreeable, and no evidence was presented that she held any ownership interest in the Buick. Anita was therefore not a transferor within the meaning of the Federal Odometer Act.

■■■ Our discussion regarding Anita's personal liability does not stop here, however. As discussed in issue one, *supra,* Duffy presented evidence that the Stepps violated portions of the Federal Odometer Act, notwithstanding § 1988. The record reflects that the Stepps received a correct odometer statement when the Buick was purchased. Mark and Anita both drove the Buick with a broken speedometer and did not determine whether the odometer was properly functioning. This was sufficient evidence permitting the trial court to infer that Anita violated the provisions of 15 U.S.C. § 1987 (operating a motor vehicle on street or highway knowing that odometer is disconnected or nonfunctional with intent to defraud). Evidence at trial regarding Anita's potential liability also focused on her recordkeeping practices. The odometer statement was false, and Anita prepared a certificate of title by virtue of a power of attorney that was never in fact granted to her. The trial court could properly infer that Anita acted with a reckless disregard for the truth, thus demonstrating an intent to defraud the Duffys. "The inference of an intent to defraud is no less compelling when a person lacks actual knowledge of a false odometer statement only by 'clos[ing] his eyes to the truth.'" *Haynes, supra* at 453, (quoting *Tusa v. Omaha Auto. Auction, Inc.,* 712 F.2d 1248, 1253–54 (8th Cir.1983)).

There was no error in imposing individual liability upon Anita.

### 4.

■■■ Agreeable next argues that the trial court erred in awarding damages to the Duffys in the amount of $7,650. The trial court

implicitly found that the Duffys had suffered actual damages of $2,550, inasmuch as this amount was tripled in accordance with the provisions of 15 U.S.C. § 1989.

At the trial court's request, the Duffys and Agreeable submitted post-trial briefs in regards to damages. Duffy presented the following:

"At trial, the defendant produced evidence that according to the Red Book, the difference in value between a 1988 Buick LeSabre with 79,000 miles and one with 114,000 miles was about $2,550.00. This figure, $2,550, seems to be a fair estimate of the the [sic] amount of value that the plaintiff lost due to the misrepresentation of the mileage by the defendant and the actual loss by the plaintiff. The statutory award would then be three times the actual damages, or $7,650.00 plus attorney fees and costs."

*Record* at 85.

As indicated above, the trial court calculated the damage award on a theory of the difference between the value of what Duffy *thought* he received versus the actual value of *what* he received. While the Federal Odometer Act does not define the term "actual damages," this court has determined that this amount is the difference in value between that which the plaintiff parted with and that which he received. *McCormick Piano & Organ Co., Inc. v. Geiger* (1980), Ind. App., 412 N.E.2d 842.

In *Beachy v. Eagle Motors, Inc.,* 637 F.Supp. 1093 (N.D.Ind.1986), the district court addressed the issue of actual damages under the Federal Odometer Act as follows:

"Although 'actual damages' is not defined in the statute, it seems reasonable to give it the meaning commonly applied to fraud cases. This is the difference in value between the amount paid by the plaintiffs—not the value of the car if it had been as represented—and the fair market retail value of a vehicle of the type purchased with the number of miles actually traveled by the car, plus such outlays as are legitimately attributable to the acts of defendants."

*Id.* at 1094–95.

The record reflects that the trial court erroneously accepted the calculation of dam-

ages advanced by the Duffys. It is apparent that the court considered the value of the Buick if it had been as represented, rather than examining the value of what Duffy actually paid versus the fair market retail value of a vehicle of a type with the number of miles actually traveled.

At trial, DeWitt testified that the value of the automobile was between $5,000 and $6,000. Duffy used *The Official Used Car Guide* to arrive at a market retail value of $5,925.[5] As indicated above, Duffy paid $5,500 for the car plus $250 in sales tax. In light of the rule announced in *Beachy* and *McCormick,* the amount of actual damages awarded to the Duffys was erroneous.

We therefore remand this case to the trial court with instructions that it recalculate the amount of damages.

### 5.

Agreeable maintains that the trial court erred in awarding attorney fees to the Duffys because no evidence of those fees was offered at trial.

The record demonstrates that eleven days after trial, the Duffys filed a motion requesting attorney fees in the amount of $7,254.54. A hearing was held, and counsel for the Duffys testified in the narrative as to the fees that were owed. The trial court entered judgment against Agreeable for attorney fees in the amount of $7,194.54. While Agreeable contends that it did not have the opportunity to cross-examine counsel for Duffy, the record reflects otherwise. At the hearing, both the court and the attorney for Agreeable questioned Duffy's counsel.

We also reject Agreeable's claim that the trial court erred in allowing evidence of attorney fees to be presented after the trial had concluded. This court has determined that a trial judge may exercise discretion in determining whether to permit a party to present additional evidence or testimony once the party has rested, once both

parties have rested, or after the close of all of the evidence. *In re Paternity of Seifert* (1993), Ind.App., 605 N.E.2d 1202, *trans. denied; Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55. Agreeable has not alleged how the trial court's decision to allow post-trial evidence of attorney fees resulted in any prejudice. Agreeable has therefore failed to demonstrate that the trial court abused its discretion.

Agreeable next claims that the trial court erred in awarding attorney fees to the Duffys because they failed to include a claim for those fees in the principal suit. Agreeable cites the following language from *DPW v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373 in support of its contention:

"Chair Lance's request for fees was a request for damages which should have been brought in the principal suit. Because Chair Lance failed to include attorney fees as a measure of damages in the principal suit, and the principal suit was fully adjudicated, it waived the issue in a subsequent proceeding, even where the proceeding was related to the principal suit."

*Id.* at 1379. In *Chair Lance,* the principal suit was initiated in 1979 and finally adjudicated in 1983. The appellee never made a request for attorney fees until January 3, 1984. Unlike the circumstances in *Chair Lance,* the Duffys included a request for attorney fees in the initial complaint which was filed on November 20, 1992. The Duffys did not waive their claim, inasmuch as a timely request was made for the fees.

Agreeable also challenges the reasonableness of the fees that were awarded to the Duffys. The amount of attorney fees awarded to a party is within the trial court's discretion, and we will reverse only where an abuse of discretion is apparent. *Posey v. Lafayette Bank and Trust Co.* (1991), Ind.App., 583 N.E.2d 149, *trans. denied; Zebrowski & Associates, Inc. v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259. When the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Posey, supra; Sei-*

---

**5.** The guide revealed that a 1988 Buick LeSabre Limited V–6 had a retail value of $8,050, and the value of the additional options on the vehicle was $725. The deduction for the mileage of 114,000 was $2,850, thus resulting in a market retail value of $5,925.

*bert v. Mock* (1987), Ind.App., 510 N.E.2d 1373.

The verified motion filed by the Duffys' counsel included an itemized statement of legal services. The fee schedules covered three calendar years from 1992 through 1994 and included paralegal and attorney time. There were different billing charges for each attorney and paralegal who worked on the case. Steve Hofer, an attorney for the Duffys, testified as to the hourly rate and explained the itemized statements contained in the verified motion. Hofer also explained that the hourly rate charged was customary for the services he provided and comparable with those charged by attorneys with comparable skill and experience.

We do not reweigh evidence and cannot find the trial court's determination of attorney's fees in this case is clearly erroneous. The trial court's award of attorney fees was proper.

The judgment is affirmed, but the cause is remanded to the trial court with instructions that it recalculate the award of damages consistent with the principles set out in this opinion.

SULLIVAN and CHEZEM, JJ., concur.