**MOLO OIL COMPANY, Appellant,**

*v.*

**RIVER CITY FORD TRUCK SALES, INC., Appellee.**

No. 96–857.

Supreme Court of Iowa.

May 28, 1998.

Rehearing Denied July 13, 1998.

Stuart R. Lefstein, Lori R. Lefstein, and Jonathan J. Heiple of Katz, McHard, Balch, Lefstein & Fieweger, P.C., Rock Island, IL, for appellant.

Thomas J. Shields of Lane & Waterman, Davenport, for appellee.

Thomas J. Miller, Attorney General, and William L. Brauch, Special Assistant Attorney General, for amicus curiae State.

W. Don Brittin, Jr., James B. West, and John B. Tuffnell of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae Iowa Auto Dealers Association.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

A number of complicated legal issues are implicated in this suit arising from a simple business transaction. The plaintiff appeals following judgment for the defendant. We affirm.

Plaintiff Molo Oil Co. (Molo) is a Dubuque, Iowa, distributor of petroleum products and an operator of convenience stores. Defendant River City Ford Truck Sales, Inc. (River City) of Davenport is a retail seller of motor vehicles. A part of River City's enterprise is to offer certain warranties for Caterpillar Company. In November 1993 Mark Molo, vice president of Molo, negotiated with River City to buy a 1989 Peterbilt semitruck for $31,500. River City, which had purchased the truck during the summer of 1993, stated the Peterbilt was in good condition, had received a complete engine overhaul, and had 186,000 miles on the odometer. (It later appeared that the truck had some 7000 miles more than this on the odometer.) There was also to be a two-year/200,000 mile Caterpillar warranty on the engine.

Prior to delivery River City advised Molo that the longest Caterpillar warranty on the engine was for one year and 100,000 miles. Molo agreed to the change and the final agreement was amended accordingly. The purchase agreement provided in part, "manufacturer's warranty on engine and clutch only." Except for the engine and clutch, the

truck was sold "as is." Molo promptly sent a check to River City for full purchase price.

Molo's driver arrived to pick up the truck but found it initially would not start. Other repairs were required before the vehicle could be taken to Molo in Dubuque. During the trip the driver noted additional problems such as inoperable windshield wipers, lack of heat in the cab, and a lack of power in the engine.

Instead of notifying River City of the problems, Molo took the truck to a repair facility in Dubuque, where the mechanic observed problems with cylinders, blue smoke emanating from the truck, a radiator clogged with dirt, and fuel leaking on top of the cylinder heads. The mechanic also questioned whether the engine had a recent overhaul, and noted the odometer read 192,975 miles; approximately 6000 more than on the odometer statement from River City (and 7000 miles more than had been indicated on the original specification sheet). The mechanic reported this information to Mark Molo.

Molo returned the truck to River City but River City refused to refund Molo's money. Eventually, when Molo arranged to have the truck driven back to Dubuque, it broke down and had to be towed to a facility where it was repaired at a cost of $8917. Apparently, excessive carbon buildup had caused the engine to malfunction, resulting in bent rods and stuck valves. Molo claimed all this damage occurred while the truck was in the possession of River City. Because the damage to the engine did not appear to be the result of poor workmanship or faulty parts, the Caterpillar warranty did not cover the repairs. By the time the truck was repaired, it had been replaced. So Molo sold the truck, netting $18,860.

Molo brought this suit against River City on counts of: (1) breach of contract; (2) federal odometer violation; (3) negligent misrepresentation; (4) Iowa statutory consumer fraud; and (5) fraudulent misrepresentation. Molo asked $22,868.49 in actual damages and also sought punitive damages.

At the close of all the evidence, the district court dismissed the federal odometer claim. The court determined that vehicles over 16,-000 pounds were exempted, under both federal and state odometer statutes, from the requirement that an odometer statement be provided upon transfer. The court also dismissed the statutory consumer fraud claim, finding that only the Iowa attorney general could file a claim pursuant to Iowa Code section 714.16(2)(a) (1995). The court dismissed the punitive damage claim.

The case was submitted to a jury on the issues of breach of contract, negligent misrepresentation, and fraudulent misrepresentation. The jury returned verdicts in favor of River City on all issues. Molo's posttrial motions were denied and judgment was entered on all claims in favor of River City. The matter is before us on Molo's appeal.

■ I. We review a denial of a motion for directed verdict on error. Iowa R.App. P. 4; *Mensink v. American Grain*, 564 N.W.2d 376, 379 (Iowa 1997). A judgment notwithstanding the verdict must stand or fall on the grounds stated in the motion for a directed verdict. *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 617 (Iowa 1990). Our review on appeal is limited to those grounds. *Id.* We simply ask whether there was sufficient evidence to justify submitting the question to a jury. *Morgan v. American Family Mut. Ins. Co.*, 534 N.W.2d 92, 96 (Iowa 1995). When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, we view the evidence in the light most favorable to the nonmoving party. *Id.*

■ II. In a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach. *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993). A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract. *Magnusson Agency v. Public Entity Nat'l Co.*, 560 N.W.2d 20, 27 (Iowa 1997).

The legal effect of a contract is always a matter for court determination. *Iowa–Illinois Gas & Elec. Co.*, 497 N.W.2d at 825. Interpretation, the meaning of contractual words, is also an issue for the court unless it is dependent upon extrinsic evidence or upon a choice among reasonable inferences from the extrinsic evidence. *Id.* Extrinsic evidence is admissible as an aid to interpretation when it throws light on the parties' situation, antecedent negotiations, the attendant circumstances, and the objectives the parties were trying to attain. *Id.* Questions of performance or breach are generally for the jury. *Id.*

It is in no way surprising that the parties present competing versions concerning the details of the sale agreement. According to River City's version, which we assume the jury accepted, the agreement was a straightforward "as is" sale of a used truck, complicated only by an engine-clutch guarantee for what was finally settled at one year/100,000 miles. According to River City's version this reduced warranty was never implicated because, though the point is hotly disputed, the engine broke down because of misuse, that is, by being improperly allowed to idle.

Molo contends the agreement provided it with a two-year/200,000 mile OPT (overhaul protection for trucks) Caterpillar warranty, and argues that, after the modification to a one-year/100,000 mile warranty, it was still entitled to an OPT warranty. Although a Caterpillar OPT warranty is not mentioned in the written agreement, was not asked for, offered or bargained for, Molo claims it was contemplated because at the time Caterpillar company's only two-year/200,000 mile warranty was an OPT warranty. The OPT warranty became important to Molo's breach-of-contract claim because an OPT warranty, at least for this truck at the time, could be issued only after extensive overhaul of the engine and replacement of parts. In Molo's view, the engine breakdown would not have occurred if such an overhaul had actually taken place.

The flaw in Molo's position is the existence of two competing explanations of why the engine broke down, only one of which was Molo's version. River City countered Molo's showing on the point with evidence that the engine broke down because it was allowed to idle improperly. The jury could have found, and we must assume did find, Molo did not establish that River City breached its agreement. The burden of proof on the breach was on Molo. In view of the conflicting evidence we cannot say that Molo established its version as a matter of law.

Molo thinks it would be entitled to recover for breach of contract even if the breakdown occurred as a result of improper idling because it was entitled to an OPT warranty. We need not explore what Molo would be entitled to under an OPT warranty because the jury verdict assumed there was no such warranty. Again, Molo certainly did not establish the point as a matter of law.

III. Molo alleges River City fraudulently furnished an inaccurate odometer statement in violation of 15 U.S.C. § 1988 (1994) (now 49 U.S.C. § 32705) [1] when it sold the semitruck. At trial Molo presented evidence that the truck had 6000 more miles than represented on the disclosure statement. The trial court granted the defendant's motion to dismiss, relying on a regulation promulgated by the national highway traffic safety administration (NHTSA), which purports to exempt vehicles that weigh more than 16,000 pounds (such as the semitruck in this case) from the act's odometer disclosure

---

1. At the time of Molo's petition the federal odometer law was codified in 15 U.S.C. §§ 1981–1991. It has since been moved to 49 U.S.C. §§ 32701–32711. We will refer to the federal odometer chapter as it is presently codified.

The section provides, in relevant part:
(a) Written disclosure requirements.
(1) Under regulations prescribed by the secretary of transportation, a person transferring ownership of a motor vehicle shall give the transferee a written disclosure—

(A) of the cumulative mileage registered by the odometer; or
(B) that the mileage is unknown if the transferor knows that the mileage registered by the odometer is incorrect.
(2) A person making a written disclosure required by regulation prescribed under paragraph (1) of this subsection may not make a false statement in the disclosure.
49 U.S.C. § 32705.

requirements. 49 C.F.R. § 580.6(a)(1) (1994). We think the ruling cannot be supported by the regulation because the authorities are clear that the regulation is invalid.

Congress passed the motor vehicle information and cost savings act in 1972. Motor Vehicle Information and Cost Savings Act, Pub.L. No. 92–513, 86 Stat. 961 (1972). The odometer law was intended to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers. 49 U.S.C. § 32701.

The act defines "motor vehicle" as follows: "Motor vehicle" means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line.

49 U.S.C. § 32101(7). The term "motor vehicle" therefore does not appear to contemplate an exception for large trucks.

The secretary of transportation exempted certain kinds of vehicles, among them vehicles having gross weight of more than 16,000 pounds. 49 C.F.R. § 508.6(a)(1). Although the secretary seems to have had a rational policy reason for the large truck exemption, it has been found at odds with the statutory language of the act. The act does not, explicitly or implicitly, exempt any class of motor vehicles from its odometer disclosure requirements. Nor does the statutory definition of "motor vehicle" provide a basis for the exemption promulgated by the NHTSA. *See Orca Bay Seafoods v. Northwest Truck Sales, Inc.*, 32 F.3d 433, 436 (9th Cir.1994) (holding exemption for large trucks invalid); *Davis v. Dils Motor Co.*, 566 F.Supp. 1360, 1362–63 (S.D.W.Va.1983) (same); *Lair v. Lewis Serv. Ctr., Inc.*, 428 F.Supp. 778, 781 (D.Neb.1977) (same); *W.W. Wallwork, Inc. v. Duchscherer*, 501 N.W.2d 751, 754 (N.D.1993) (same). *But see Mitchell v. White Motor Credit Corp.*, 627 F.Supp. 1241, 1247–50 (M.D.Tenn.1986) (upholding the regulation). Under these authorities an exemption cannot be justified under 49 C.F.R. § 580.6(a)(1).

Nor can Iowa Code section 321.71(7) serve as a basis for exempting the truck in ques-

tion from federal odometer requirements. Section 321.71(7) expressly excludes trucks that weigh more than 16,000 pounds from state odometer requirements, but does not purport to control the federal odometer legislation. So, assuming Molo can establish the necessary intent on the part of River City, a matter we address in the following division, Molo is entitled to recover damages in some amount on the federal odometer claim.

IV. Although "actual damage" is not defined in the statute, some courts have given it the meaning commonly applied in fraud cases: the difference in value between the amount paid by plaintiffs and the fair market retail value of a vehicle of the type purchased with the number of miles actually traveled by the motor vehicle, plus such outlays as are legitimately attributable to the acts of defendant. *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 725 (8th Cir.1978); *Stepp v. Duffy*, 654 N.E.2d 767, 774 (Ind.Ct.App.1995). It was established in the present case, and is not disputed, that the market value of the truck would not be reduced by the 6000 mile discrepancy on the odometer statement. Molo was in no way damaged by the mileage discrepancy. The federal statute however also allows recovery on an alternative basis. It allows recovery of "three times the actual damages or $1500, whichever is greater." 49 U.S.C. § 32710. Therefore, from the plain wording of the statute, it appears Molo might be entitled to $1500 even though the false statement did not bear on the actual value of the truck.

■ V. The $1500 is not however automatic. Section 32710 allows civil damages only when the person violated this chapter with "the intent to defraud." *See Haynes v. Manning*, 917 F.2d 450, 453 (10th Cir.1990); *Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248, 1253 (8th Cir.1983); *Ryan v. Edwards*, 592 F.2d 756, 761 (4th Cir.1979); *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir.1978). This intent can be found even if there are no allegations the defendant had tampered with the odometer. *Tusa*, 712 F.2d at 1250.

The foregoing authorities indicate gross negligence or reckless disregard for the truth will support an inference of an intent to defraud. *See Haynes*, 917 F.2d at 453;

*Tusa,* 712 F.2d at 1253; *Ryan,* 592 F.2d at 761; *Nieto,* 578 F.2d at 642. Molo's evidence however does not support such a finding; at most it would support a finding of simple negligence. We have said the line between negligence and gross negligence is a nebulous one, but that it implies conduct more culpable than ordinary inattention or inadvertence. *Thompson v. Bohlken,* 312 N.W.2d 501, 504 (Iowa 1981); *see also* 57A Am.Jur.2d *Negligence* §§ 243, 261 (1989). The attendant circumstances largely control whether the line between negligence and gross negligence is crossed. 57A Am.Jur.2d *Negligence* § 244 (1989).

■ The attendant circumstances here militate strongly in favor of simple negligence. The variation between actual and reported miles was certainly trivial for a vehicle the evidence discloses was intended to operate for 1,000,000 miles. To be sure, trivial consequences can flow from willful or wanton conduct or from gross negligence. Under the circumstances here, though, we think the inconsequential variation in the odometer reading is an indication of an inconsequential variation from reasonable conduct. The relative closeness in the reading does not square with an effort to deceive. Neither is it an indication of recklessness in reporting the accurate total. Rather than an attempt to defraud, the narrow miss suggests an honest mistake in an effort to list the accurate mileage. The vehicle could have been driven the 6000 miles after coming into River City's possession, with a failure to note that fact on the business records being an innocent oversight. To fail to recheck the odometer at the time of the sale to Molo can be said to have resulted in a violation of the statute, and to have amounted to negligence—but not to gross negligence.

2. Although the district court did not deny Molo's motion on this ground, we may affirm the trial court's judgment on any basis appearing in the record. *See Harbit v. Voss Petroleum, Inc.,* 553 N.W.2d 329, 330 (Iowa 1996); *Rouse v. Union Township,* 530 N.W.2d 714, 717 (Iowa 1995).

3. Iowa Code § 714.16(2)(a) provides in part:
   The act, use or employment by a person of an unfair practice, deception, fraud, false pretense,

Molo's challenge to dismissal of the odometer claim fails.

VI. Although the jury found for River City on the negligent misrepresentation claim, Molo argues River City is liable for negligent misrepresentation as a matter of law. This is because River City offered the two-year/200,000 mile warranty not knowing the terms of such a warranty, or even whether one was available on the truck.

■ We have recognized that a person in the profession or business of supplying information or opinions owes a duty of reasonable care to clients and others. *See Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 287 (Iowa 1981) (savings and loan company owes duty to home buyer with respect to appraisal); *Ryan v. Kanne,* 170 N.W.2d 395, 403 (Iowa 1969) (accountant owes duty to prospective investors in preparing financial statements). We refuse however to apply this rule to a retailer in the business of selling and servicing its goods. *See Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994) (claim against bank officer involved in arm's-length negotiation of loan guarantee with bank customer not actionable); *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 581–82 (Iowa 1990) (no cause of action for negligent misrepresentation against seller of retail merchandise). Moreover, if the transaction at issue took place at arm's length, the plaintiff's cause of action must fail. *See Meier,* 454 N.W.2d at 581. It is not disputed that the sale of the Peterbilt truck from River City to Molo was a commercial transaction conducted at arm's length.

Molo's negligent misrepresentation claim fails as a matter of law.[2]

■ VII. The trial court dismissed Molo's claim under Iowa's consumer fraud statute, Iowa Code § 714.16(2)(a).[3] Although

false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission, in connection with the lease, sale, or advertisement of any merchandise or the solicitation of contributions for charitable purposes, whether or not a person has in fact been misled, deceived, or damaged, is an unlawful practice.

this provision does not expressly create a private cause of action, Molo contends one should exist because the statute was violated when River City engaged in unfair and deceptive practices by falsely representing orally and in writing that the truck: (1) had an engine with zero mileage since completion of a major overhaul; (2) came with a two-year/200,000 mile OPT. warranty on the engine from the manufacturer; (3) had a windshield in good condition; and (4) had 186,000 miles on the odometer.

Because the statute does not expressly create a private cause of action, the parties agree the question becomes whether a violation of it amounts to perpetration of a crime. Both parties cite our opinion *Lenertz v. Municipal Court*, 219 N.W.2d 513, 516 (Iowa 1974), in which we found that section 713.24(2)(b) (now Iowa Code § 714.16(2)(b)) could not be interpreted as a criminal statute. *Lenertz* makes it clear that the beginning and controlling question is one of legislative intent: did the legislature intend for a violation to be a crime. *Lenertz*, 219 N.W.2d at 515–16. We held that a violation of this section did not constitute a crime because the statute as finally adopted did not provide punishment for its violation and because of its legislative history. The same grounds and reasoning present, and, we think, demand a similar conclusion here.

The legislature's enactment in 1994 of Iowa Code chapter 714B regarding prize promotions is a strong indication that section 714.16(2)(a) does not allow a private cause of action. Chapter 714B contains a section of definitions, section 714B.1; a section concerning certain conduct, § 714B.2; a section prohibiting various practices, § 714B.3; and a section requiring that certain information be provided to the attorney general on request, § 714B.5. Section 714B.7 provides that "[a] violation of this chapter constitutes a violation of section 714.16, subsection 2, paragraph 'a.'" Section 714B.7 therefore incorporates a violation of chapter 714B into the consumer fraud act, thereby incorporating all of the remedies available under the consumer fraud act, including enforcement by the attorney general under sections 714.16(3)-(14).

In addition, the legislature also enacted section 714B.6 which provides that "[a] person who intentionally violates this chapter is guilty of an aggravated misdemeanor." The legislature therefore apparently knew that incorporating a violation of chapter 714B into the consumer fraud act would not make such a violation a crime, and that in order to make such a violation a crime it needed to add a section doing so.[4]

Even more importantly, is the enactment of section 714B.8 which provides:

714B.8. PRIVATE ACTION.

In addition to any other remedies, a person suffering pecuniary loss as a result of a violation of this chapter by another person may bring an action against such other person to recover all of the following:

1. The greater of five hundred dollars or twice the amount of the pecuniary loss.

2. Costs and reasonable attorney fees.

This section expressly creates a cause of action that the legislature did not believe existed as part of the consumer fraud act. Otherwise section 714B.8 would be unnecessary. The enactment of this section therefore indicates the legislature did not believe that such a cause of action existed under the consumer fraud act, and that the legislature had not intended that one be implied under the consumer fraud act.

The point is underscored by law from other jurisdictions. All fifty states have considered consumer protection statutes. Only four, including Iowa, do not specifically provide for a private cause of action. D. Pridgen, *Consumer Protection and the Law* § 6.02 (1990). Moreover in the two states (New York and Oklahoma) in which the courts held there was not a private right of action, the legislature subsequently amended the chapter to expressly provide for one. It is clear that, when state legislatures want consumers to enforce their consumer fraud acts, they expressly provide for that remedy in the statute. Iowa has not done that.

The trial court correctly ruled that no private cause of action is created.

4. This is also persuasive in finding that Code § 714.16(2)(a) is not a penal offense.

■ VIII. Molo separately challenges the trial court's dismissal of its punitive damage claim. The ruling was correct. Except in limited circumstances not implicated here, punitive damages are not allowed in breach-of-contract or fraudulent-misrepresentation suits in the absence of malice, fraud, or other illegal actions. *Clark–Peterson Co. v. Independent Ins. Assocs. Ltd.*, 514 N.W.2d 912, 916 (Iowa 1994). We agree that Molo did not make out a punitive damage claim.

IX. Molo raises a number of other challenges all of which we have studied and reject. For the most part they address discretionary rulings in evidence or pleading matters which there was no abuse. With one exception it would unduly extend this opinion to detail them.

■ In one of these challenges Molo assails the giving of jury instructions concerning affirmative defenses which were not specifically pled as demanded by Iowa rule of civil procedure 86. Impossibility of performance, prevention, and waiver are affirmative defenses. *See* Iowa R. Civ. P. 86; *In re Guardianship of Collins*, 327 N.W.2d 230, 233 (Iowa 1982) (waiver defense). The court nevertheless instructed on these defenses in accordance with River City's position, hotly disputed by Molo, that Molo made its performance impossible by failing to deliver the truck as required for needed repairs.

Although River City did fail to plead this position as an affirmative defense, the matter became thoroughly litigated at trial. Molo's counsel was made aware before and throughout the trial of River City's position on the question and failed to preserve any objection to the scope of the pleadings as the evidence came in. The issue was presented before the jury and there was abundant evidence to support a jury finding favoring River City's contention. The issue was thus tried by consent, implicating Iowa rule of civil procedure 119 (formerly rule 106) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *see also Dutcher v. Randall Foods*, 546 N.W.2d 889, 893 (Iowa 1996). Because the affirmative defenses were tried, and the evidence supported their submission, we reject the challenge to the instructions.

We are not unmindful that this rejection will be particularly galling to Molo because of a somewhat related evidentiary ruling. In contending against River City's position on Molo's failure to offer the truck for repairs, Molo sought to introduce its counsel's letter to do so—a few months after the breakdown. (This attempt is only one illustration that the issue was in fact tried by consent.) The offer was rejected because the trial court thought it too remote in time from the breakdown to qualify under the requirements of the contract, and also because the court thought it would likely require testimony by Molo's counsel—resulting in a continuance. Although under the circumstances the trial court might well have admitted the letter, we cannot say its refusal to do so amounted to abuse.

We thus reject all of Molo's assignments of error.

**AFFIRMED.**