**IN THE COURT OF APPEALS OF IOWA**

No. 13-1119
Filed June 11, 2014

**ROBERT MCFADDEN,**
    Plaintiff-Appellant,

**vs.**

**CENTRAL IOWA TRUCK AND
TRAILER, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Boone County, Dale E. Ruigh,

Judge.


Robert McFadden appeals the district court's dismissal of his claims for

breach of an oral contract. **AFFIRMED.**


Benjamin T. Doran of Doran Law Firm, Boone, for appellant.

John D. Jordan of Jordan & Mahoney Law Firm, P.C., Boone, for appellee.


Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

This appeal involves a customer who is unhappy with the engine installed in his classic car. The customer, Bob McFadden, sued his mechanic's shop for breach of an oral contract. McFadden alleged he wanted a "totally stock" GM engine and received an engine containing aftermarket parts instead. He also expressed dissatisfaction with the engine's warranty. McFadden sought to rescind the contract.

The district court found no breach and, alternatively, ruled McFadden was not entitled to rescission. McFadden challenges those conclusions on appeal. Because the district court did not err in ruling McFadden failed to establish a breach of the oral contract, we affirm.

## I.    Background Facts and Proceedings

McFadden owns a 1970 Chevrolet SS Chevelle. When the car needed repairs, McFadden took his cousin's recommendation to have the engine work done by Dave Shank at Central Iowa Truck and Trailer, Inc. (Central Iowa) in Boone. Shank worked as a mechanic for twenty-five years and was the manager and sole employee of Central Iowa. Shank pulled out the Chevelle's 396-cubic-inch engine and delivered it to Arnold Motor Supply for an estimate on the repair cost. Because the Arnold machinist advised that rebuilding would cost more than the value of the engine, McFadden decided to replace the old engine with a new 502-cubic-inch engine.

McFadden found an advertisement for a "General Motors ZZ502 big block deluxe crate engine" in a Summit Racing Equipment catalog. He ripped out that

page and showed it to Shank. McFadden recalls telling Shank: "[T]his is the motor I want."

Shank said he could buy the engine for McFadden using his discount at Arnold Motor Supply to save McFadden several hundred dollars. McFadden agreed. Shank called Gary Kemp at Arnold and asked him to order the engine model requested by McFadden. Kemp did not order from Summit; he instead ordered the engine from Motorville, a wholesale company in Kansas City. McFadden gave Arnold an $8000 down payment on the engine.

When the engine was shipped to Shank, he called McFadden to have him inspect it before installation. During his inspection McFadden noticed the cylinder heads and high rise intake manifolds were aftermarket products manufactured by Edelbrock rather than "genuine GM parts." McFadden said when he asked about those parts, Shank "got kind of mad" and said Chevy did not make their own intakes and heads. As Shank remembered the conversation, he told McFadden: "General Motors farms out a lot of their engine work," and he was not sure whether "they possibly had Edelbrock make those heads for them." McFadden testified he was "naïve" at that time and took Shank's word that GM did not manufacture its own heads and manifolds.[1] Despite his reservations, McFadden told Shank to go ahead with the installation.

McFadden received a receipt from Central Iowa dated August 5, 2011. The receipt reflected his down payment of $8000 and an additional amount due

---

[1] McFadden testified, after purchasing the engine, he did research and learned GM does manufacture its own heads and intakes.

of $4,602.94. In addition, McFadden paid Shank $500 for "after hours" labor and tipped Shank $300. The receipt noted at the bottom: "ENGINE HAS 24 MONTH WARRANTY OR 50,000 MILES, WHICHEVER COMES FIRST."

The engine did not run properly.[2] A week or two after installation, the distributor gear needed to be replaced. Then two or three weeks later, McFadden contacted Shank to say he thought the "motor was blown up." Shank removed the engine and took it to Arnold for inspection. Arnold employees shipped the engine back to Motorville for major repairs covered under the warranty. Before the fully assembled engine was returned to Shank, he received correspondence from McFadden's attorney. At the time of the trial, the repaired engine was sitting in Shank's shop. Shank testified he would install it back into McFadden's car at no charge under the warranty if McFadden asked him to do so.

On April 23, 2012, McFadden filed a petition at law alleging he had a verbal agreement with defendant Central Iowa to install a "genuine GM ZZ502 big block engine" into his Chevelle. According to the petition, it was "important" to McFadden the engine contain "genuine GM parts" and carry a "GM warranty." The petition alleged McFadden did not receive the engine he intended to purchase, and stated McFadden did not want Central Iowa to reinstall the engine in its possession. Plaintiff McFadden asked for "the agreement between the parties to be rescinded, cancelled, and terminated due to the Defendant's breach," and he sought the return of his $13,402.94 in payments.

---

[2] McFadden does not allege the aftermarket parts are responsible for the engine problems.

On May 21, 2012, Central Iowa filed an answer and a cross-petition naming Arnold as a third-party defendant. Central Iowa admitted entering a verbal agreement with McFadden to install the block engine but denied selling the engine to him. Central Iowa affirmatively alleged McFadden purchased the engine from Arnold. Arnold, as third-party defendant, filed an answer, stating: "[T]he Third Party Plaintiff [Central Iowa] purchased an engine from Arnold Motor Supply, LLP, for a purchase price of $8,950.00."

The district court held a trial on April 24, 2013. Plaintiff McFadden testified for himself; Shank testified for Central Iowa; and Gary Kemp testified for Arnold. On June 20, 2013, the district court entered its "Findings of Fact, Conclusions of Law, and Order." The court determined "a preponderance of the evidence fails to show that any of the parts of the engine installed in Mr. McFadden's Chevelle were other than 'genuine GM parts.'" The court also concluded the record did not support McFadden's allegation the agreement was to install an engine with only parts manufactured directly by General Motors rather than by a supplier to General Motors. The court pointed out McFadden accepted the engine ordered through Arnold[3] "knowing that Edelbrock may have manufactured certain parts of the engine."

Regarding the warranty complaint, the court found it significant that the invoice from Central Iowa included a twenty-four month, 50,000-mile guarantee.

---

[3] The court also ruled its dismissal of McFadden's claim against Central Iowa resulted in Central Iowa's claim for indemnity against Arnold becoming moot. Arnold is not a party to this appeal.

The court decided McFadden had not proved the warranty was inconsistent with the agreement of the parties. The court concluded:

> Because Mr. McFadden has failed to show Central Iowa's breach of their agreement, his claim for rescission of the contract must be dismissed. Even if the evidence showed a breach, the circumstances of this case would not support the rescission of the entire contract and return of all monies spent by Mr. McFadden on the engine, as opposed to an award of damages caused by the breach.

McFadden appeals.

## II.     Standard of Review

The parties disagree on the appropriate standard of review. Citing *Gouge v. McNamara*, 586 N.W.2d 710, 712 (Iowa Ct. App. 1998), McFadden advocates for de novo review because his request for rescission of the contract is an equitable remedy. Central Iowa argues our review is for errors at law, not de novo, because McFadden captioned his petition "at law," and the district court issued findings of fact and conclusions of law. The parties stipulated to the admission of all the exhibits and no objections were made during the trial.

Because we do not reach the question of rescission, we conclude our review is for errors at law. *See Empl. Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 153 (Iowa Ct. App. 1995) (applying "at law" review to district court's findings of fact concerning breach of oral contract). The district court's findings of fact are binding on appeal if supported by substantial evidence. *Id.*

### III. Analysis

McFadden advances a two-fold challenge to the district court's ruling. First, he contends the court was mistaken in deciding Central Iowa did not breach the oral agreement to install a deluxe GM engine in his classic car. McFadden believes he proved broken promises concerning both the engine's parts and the warranty. Second, McFadden claims the court erred in finding he was not entitled to the remedy of rescission for Central Iowa's breach of contract. Because we affirm the district court's ruling that Central Iowa did not breach the oral contract, we need not address McFadden's second appellate claim.

As the complaining party in this breach-of-contract case, McFadden must show (1) the existence of a contract, (2) its terms and conditions, (3) his own performance under the contract, (4) the defendant's breach of the contract in a particular way, as well as (5) damages resulting from the breach. *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). The parties agree an oral contract existed, but they disagree on the contract's precise terms and the defendant's alleged breach.

McFadden contends their oral agreement required Shank to install a "genuine GM ZZ502 engine" bearing the same parts number as the engine shown in the Summit catalog. He asserts the engine ordered by Arnold and installed by Central Iowa was not "the motor he wanted or thought he was getting." He alleges the Edelbrock parts affect his "desire to have a totally stock Chevelle Classic that would increase its value."

McFadden also argues the engine he wanted came with a warranty "that would let him go to a GM dealer anywhere to get the work done and the warranty honored, since it came from GM." Although the warranty from Central Iowa covered the same number of years and miles, McFadden was worried he would have to consult with Shank before having repairs completed at another shop.

Central Iowa counters that despite the "importance" McFadden now places on the idea of "genuine GM parts" and "having a GM warranty"—he did not meet his burden to prove those terms were part of the oral agreement. Central Iowa argues the district court correctly found McFadden did not show the inclusion of Edelbrock parts meant Shank failed to install a "genuine GM ZZ502 engine." Defendant further argues the only mutually agreed-to warranty was the one prominently displayed at the bottom of its invoice, the invoice paid by McFadden.

A binding contract exists if the parties reach a meeting of minds on the material terms. *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011). Terms are material if they are significant to the contract. *Id.* A binding contract also requires an offer and acceptance. *Id.* at 488. "Acceptance of the offer is indicated by a manifestation of assent to the terms of the offer made by the party to whom it is addressed in a manner invited or required by the offer." *Id.* Importantly, mutual assent is based on objective evidence, not the hidden intent of the parties. *Id.* A breach occurs when, without legal excuse, a party fails to perform any promise which forms a whole or a part of the contract. *Molo Oil,* 578 N.W.2d at 224.

This record contains objective evidence showing the parties' mutual assent to Shank's installation of the engine ordered from Motorville. Shank sought McFadden's approval before installing the engine. Despite McFadden's reservations about the aftermarket parts, it is undisputed he gave Shank the go-ahead. As the district court aptly emphasized: "Mr. McFadden accepted the engine ordered through Arnold Motor Supply for installation in his Chevelle knowing that Edelbrock may have manufactured certain parts of the engine." Thus, even if McFadden harbored an unspoken desire to have all GM-manufactured parts, he did not express that intent to Shank at the time of their mutual assent to proceed with the installation of the Motorville engine.[4] Because Shank installed the engine approved by McFadden, Central Iowa did not breach a term of the oral contract.

Objective evidence also supports the district court's conclusion on the warranty issue. The district court pointed to the invoice documenting the installation of a "GM ZZ502 big block crate engine" and accompanied by the statement: "Engine has 24 month warranty or 50,000 miles, whichever comes first." The court noted Central Iowa "has honored that warranty by doing all of its repair work and securing a repaired engine through Arnold Motor Supply without charge" to McFadden, and stood ready to continue honoring the warranty by reinstalling the repaired engine. The court stated:

> Nevertheless, Mr. McFadden asserts that his warranty does not comply with the parties' claimed agreement that the engine would have a "GM warranty." Certainly, both Mr. McFadden and Central

---

[4] We also find it significant that McFadden agreed to have the engine sent back to Motorville for repairs after he was aware of the aftermarket parts and Shank's warranty.

Iowa contemplated that the engine installed in the Chevelle would have a warranty of some type. Central Iowa's invoice refers to the warranty and Mr. McFadden, after receiving the invoice, made no complaints about the warranty until the pending dispute arose.

Not only did McFadden not complain, he paid the entire amount invoiced and voluntarily added a handsome tip for Shank's good work. On this record, McFadden did not carry his burden to prove the warranty provided by Shank was inconsistent with the parties' agreement on the material terms of the contract.[5]

We find no error in the district court's conclusion Central Iowa did not breach any material terms of the oral contract to install the GM engine in McFadden's car.

**AFFIRMED.**

---

[5] The district court further concluded McFadden did not prove the Central Iowa warranty was less convenient than a GM warranty because it required prior approval for repairs. We agree with the district court's assessment that the warranty provided by Central Iowa did not breach a material term of its contract with McFadden.