[No. 20930–2–I.   Division One.   January 17, 1989.]

BRITTINGHAM LEASING CORPORATION, *Appellant,* v. GARY MICHAEL SZYMANSKI, ET AL, *Defendants,* CONTRACTORS BONDING & INSURANCE CO., *Respondent.*

WILLIAMS, J. Pro Tem., concurs by separate opinion.

*Robert L. McAdams,* for appellant.

*Bobette S. Jones,* for respondent.

SCHOLFIELD, J.—The plaintiff, Brittingham Leasing Corporation, appeals the trial court's order denying its motion for summary judgment against Contractors Bonding & Insurance Company (CBIC) and dismissing its claim against CBIC. We affirm.

## FACTS

The following facts were set forth in Brittingham's motion for summary judgment and adopted as being true by CBIC in its motion for summary judgment of dismissal.

In September 1984, CBIC became the surety on a $15,000 statutory motor vehicle dealer's license bond, required by RCW 46.70.070, which named Gary Szymanski (d/b/a Exotics Unlimited) as principal. Jeffrey Rieker was apparently employed by Exotics Unlimited.

In November 1984, Rieker presented a credit application to Rainier National Bank, in which he claimed to be an executive sales manager for Brittingham and the owner of Exotics Unlimited. In January 1985, Rieker financed a 1982 Porsche 911 through Rainier. Subsequently, a certificate of title was issued showing Rieker and Exotics Unlimited as registered owner and Rainier as the legal owner.

Brittingham is a California corporation which, at the request of motor vehicle dealers, purchases motor vehicles

from these dealers and leases vehicles to customers recommended by the dealers. Rieker first became known to Brittingham in November 1984, by referring motor vehicle dealers and customers to Brittingham. Rieker received a finder's fee for any resulting purchase and lease transactions. However, at no time was Rieker ever an employee of Brittingham.

In early May 1985, Rieker contacted Brittingham and spoke with credit officer David Tubach. Rieker represented himself as a motor vehicle dealer doing business as Exotics Unlimited. Rieker requested that Brittingham purchase a 1982 Porsche 911 from the inventory of Exotics Unlimited and then lease the vehicle to an Exotics Unlimited customer, Gary Szymanski, on a 4–year lease with an option to purchase at the end of the term. Tubach took the necessary information from Rieker to fill out an application for lease financing in order to perform a credit investigation on Szymanski. Szymanski was represented as being a vice–president of Seattle Fast Freight, Inc., with a regular salary, and having additional income from truck leases.

In performing the credit investigation, Tubach obtained a consumer credit report on Szymanski and verified Szymanski's employment with Seattle Fast Freight by telephone. Relying upon these representations, Brittingham forwarded to Exotics Unlimited the necessary paperwork for the lease and requested other documentation on Szymanski. Rieker and Szymanski subsequently returned the completed paperwork, a check for Szymanski's initial lease payment, a copy of Szymanski's driving record, and IRS form 1099 confirming Szymanski's income from Seattle Fast Freight. Also returned was a Dealer Temporary Permit Application (transfer of title), showing Szymanski as registered owner and Mitsubishi Bank (the bank financing Brittingham's purchase of the vehicle) as legal owner.

Upon receiving these documents on June 20, 1985, Brittingham transferred funds of $20,005.75 to Exotics Unlimited in payment for the Porsche. In September 1985, Brittingham became aware that the title to the Porsche had

never been transferred. After investigation, Brittingham discovered that Rainier still held title, had never been paid, and that its loan was delinquent.

In November 1985, Brittingham filed a complaint against Szymanski, Rieker, and CBIC, alleging fraud, misrepresentation, and conversion. In September 1986, Brittingham procured a stipulated money judgment against Szymanski and Rieker for $27,176.10. Brittingham then moved for summary judgment against CBIC, as surety, for payment of the amount of the bond, and CBIC filed a cross motion for summary judgment of dismissal. On August 4, 1987, the trial court denied Brittingham's motion for summary judgment and granted CBIC's motion for summary judgment of dismissal, holding that Brittingham "is not an intended beneficiary of a Washington motor vehicle dealer's statutory license bond." This appeal timely followed.

## SUMMARY JUDGMENT

The only issue presented on appeal is whether, as a matter of law, Brittingham is entitled to recover from CBIC on Szymanski's statutory motor vehicle dealer's license bond. Brittingham contends that the trial court's order on summary judgment should be reversed because it is a "retail purchaser" who is entitled to recovery against a Washington motor vehicle dealer's statutory license bond under RCW 46.70.070.

On review of an order granting summary judgment, the appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In conducting this review, the appellate court may consider only those materials that the trial court relied on in making its decision. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 390, 715 P.2d 1133 (1986). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 853, 751 P.2d 854 (1988).

In the present case, neither party to the appeal contends that any material issues of fact exist. When this matter was before the trial court, CBIC adopted, as true, the facts set forth in Brittingham's motion for summary judgment. What the parties disagree about are the legal conclusions to be drawn from these facts. Therefore, we must determine which party is entitled to judgment as a matter of law.

RCW 46.70.070(1) establishes who can recover against a motor vehicle dealer's statutory license bond and under what circumstances such recovery is available. In pertinent part, RCW 46.70.070(1) reads as follows:

> Any retail purchaser who shall have suffered any loss or damage by reason of breach of warranty or by any act by a dealer which constitutes a violation of this chapter shall have the right to institute an action for recovery against such dealer and the surety upon such bond.

Therefore, a party seeking recovery under RCW 46.70.070 must satisfy three requirements: (1) that he is a retail purchaser; (2) that he has suffered loss or damage; and (3) that such loss or damage was caused by "breach of warranty or by any act by a dealer which constitutes a violation of this chapter".

■ Recovery under RCW 46.70.070 is restricted to "retail purchasers", *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 459 P.2d 389 (1969), and Brittingham argues that it is a "retail purchaser". The term "retail purchaser" is not defined in RCW 46.70 or by case law.

> Unambiguous words within a statute which are not defined therein should be given their ordinary meaning, which may be determined by reference to such extrinsic aids as dictionaries. *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976). In addition, if the Legislature uses words which have a common meaning, that meaning will be applied to the statutory language, unless it results in an absurdity or incongruity. *In re Lehman*, 93 Wn.2d 25, 604 P.2d 948 (1980).

*Brenner v. Leake*, 46 Wn. App. 852, 854–55, 732 P.2d 1031 (1987). However, in construing a statute, the purpose for

which the statute was enacted is of prime importance. *Mitchell v. John Doe,* 41 Wn. App. 846, 849, 706 P.2d 1100 (1985).

■ "Retail" is defined as "to sell directly to the ultimate consumer". *Webster's Third New International Dictionary* 1938 (1969); *see also* Black's Law Dictionary 1478–79 (4th rev. ed. 1968). A purchaser is a "buyer." Black's Law Dictionary 1399 (4th rev. ed. 1968). Therefore, a "retail purchaser" must be the buyer who is the "ultimate consumer" to whom the retailer sells. "Consumer" means the "[o]ne who uses economic goods". Black's Law Dictionary 389 (4th rev. ed. 1968). "Ultimate" means "final", "the last in the train of progression". Black's Law Dictionary 1691 (4th rev. ed. 1968). Therefore, the "retail purchaser" is the buyer who is the final user of the goods, as distinguished from a middleman or a purchaser who plays a wholesaler role.

Here, Brittingham does not appear to be a retail purchaser because it is not the final user who could be generalized as being "last in the train of progression". What Brittingham does with the vehicles it purchases is to, basically, sell the right to use these vehicles to the ones who are the ultimate consumers. The option to purchase at the end of the lease term makes it a lease/sell arrangement. The buyers of this right are the ultimate consumers in the sense that they are "the last [persons] in the train of progression" who pay to "use" the goods. Brittingham acts as a middleman in the chain of supply. Therefore, Brittingham is not a "retail purchaser" for purposes of RCW 46.70-.070(1).

Accordingly, we affirm the trial court.

SWANSON, J., concurs.

WILLIAMS, J.* (concurring)—Brittingham, a foreign corporation engaged in the business of leasing vehicles, purchased an automobile in the State of Washington for the purpose of leasing that vehicle to a third person. The issue is whether the transaction was a retail sale qualifying Brittingham to recover against Szymanski's motor vehicle dealer's bond as a "retail purchaser." RCW 46.70.070. The Legislature has defined the characteristics of retail transactions in the retail sales tax law.

Leasing of personalty is a retail sale. RCW 82.04.050(4), *see also Gandy v. State,* 57 Wn.2d 690, 359 P.2d 302 (1961). A sale to a person who "purchases for the purpose of resale as tangible personal property in the regular course of business" is not. RCW 82.04.050(1). Therefore, because Brittingham purchased the vehicle for resale, or in this case, for lease, in the regular course of its business, the sale was not at retail and the dealer's bond, which is designed to protect only a retail purchaser, is not available to cover Brittingham's loss.

---

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).