[No. 27418-7-III.   Division Three.   December 22, 2009.]

ROB QUINN, *Appellant*, v. CHERRY LANE AUTO PLAZA, INC.,
ET AL., *Respondents*.

712

*Tonya R. Hanson* (of *Hanson Law Offices PS*) and *Alan L. McNeil*, for appellant.

*John P. Bowman* (of *Keefe Bowman Bruya PS*), for respondents.

¶1 KORSMO, J. — The trier-of-fact did not find Rob Quinn's evidence compelling and entered a judgment for the defendants. Mr. Quinn appeals. This court does not reweigh evidence and make its own factual determinations. Accordingly, the judgment is affirmed.

## FACTS

¶2 This case revolves around Mr. Quinn's efforts to purchase a used 2003 Chevrolet Silverado truck from respondent Cherry Lane Auto Plaza Inc. Michael Lilley purchased the vehicle at auction for Cherry Lane. The odometer cluster did not properly illuminate, so a replacement cluster was ordered from a used parts dealer on December 21, 2006. Mr. Lilley planned to have the replacement cluster substituted and the odometer reset by an outside business to reflect the correct mileage. Ten days later Mr. Lilley suffered a heart attack and was hospitalized until January 17, 2007.

¶3 While Mr. Lilley was out, the replacement part arrived and was installed by Discount Auto, a business owned

by Cherry Lane, instead of by the outside firm. The odometer was not reset and reflected 26,814 miles instead of the vehicle's actual 84,901 miles. Discount Auto returned the Silverado to Cherry Lane, where it was parked on a section of the lot not normally used for selling vehicles. The vehicle was marked "for sale."

¶4 Mr. Quinn visited the dealership on January 25, 2007, and saw the Silverado. He wanted to buy it, but could not reach a deal that included acceptable monthly payment terms. He left the lot. Shortly after he returned home, Mr. Quinn received a phone call from Tim McKenna, finance manager and acting general manager of Cherry Lane. Mr. Quinn agreed to return to Cherry Lane that evening.

¶5 He and McKenna reached an agreement. Mr. Quinn would trade in four operable vehicles and produce title for them within five days of the Silverado being picked up.[1] The sales agreement also provided that Cherry Lane could demand return of the Silverado if the lending institution refused to finance the purchase. The odometer disclosure statement prepared as part of the sales paperwork represented the vehicle's mileage as 26,814. Mr. Quinn drove away with the Silverado.

¶6 Mr. McKenna did not know that the odometer statement was incorrect. The listed mileage was within the expected range for the age of the vehicle, which was in overall good condition. The actual mileage information was available at the dealership, but sales staff did not normally access the information in accordance with Cherry Lane's internal business practices. It was also the practice at other local dealers that similar internal documents were not typically available to sales staff.

¶7 Mr. Lilley returned to work and learned of the sale—and the incorrect odometer reading—shortly after Mr. Quinn took possession of the Silverado. He advised Mr. McKenna of the facts. Mr. McKenna informed the bank the following day of the odometer discrepancy and the financing

---

[1] Two of the four vehicles turned out to be inoperable.

was cancelled. Mr. Lilley also directed Mr. McKenna to inform Mr. Quinn and have the Silverado returned and, if necessary, cancel the transaction.

¶8 Mr. McKenna attempted to contact Mr. Quinn by telephone, but was unable to reach him until January 29. He apologized to Mr. Quinn and offered to cancel the transaction and renegotiate. He also asked Mr. Quinn to bring the Silverado in so that the odometer could be reset. Mr. Quinn was offered the use of any vehicle on the lot while the work was done. Further negotiations ensued at the dealership that day, but no agreement was reached. Mr. Quinn departed without leaving the Silverado.[2]

¶9 Mr. McKenna was unable to reach him the following day. On the evening of January 31, Cherry Lane repossessed the Silverado by use of a towing company. The dealership stored Mr. Quinn's personal belongings, but he declined to retrieve them or his traded-in vehicles. At the time of the repossession, Mr. Quinn had turned over two of the four trade-in vehicles. He also had not provided title to one of them.

¶10 Mr. Quinn filed suit March 12, 2007. A five-day bench trial was held in June 2008. The following month the court issued a memorandum opinion ruling in favor of the defendants and dismissing all causes of action. The court reasoned that Cherry Lane's actions showed no intent to deceive or defraud Mr. Quinn under the state and federal odometer laws and there was no completion of the vehicle sale due to the failure to turn over four working vehicles with valid titles. The court expressly found Mr. McKenna's testimony about the dealings was more credible than Mr. Quinn's version. Written findings of fact and conclusions of law were entered August 22. Mr. Quinn then timely appealed to this court.

---

[2] Mr. Quinn testified in his deposition that he was not going to turn the Silverado over to the dealership and "I told him that the ball was in their court, make me, you know, make me happy." Clerk's Papers 48.

## ANALYSIS

¶11 The appellant raises several statutory claims relating to odometers and dealer practices, including a claim for conversion of personal property. The bench verdict disposes of most claims, and the court's legal determination that the sale was never completed resolves the others.

### *Federal Odometer Statute*

¶12 Federal law requires one who transfers a vehicle to another to disclose known irregularities in the odometer reading. 49 U.S.C. § 32705. A private right of action is created in 49 U.S.C. § 32710:

> (a) VIOLATION AND AMOUNT OF DAMAGES.—A person that violates this chapter or a regulation prescribed or order issued under this chapter, *with intent to defraud*, is liable for 3 times the actual damages or $1,500, whichever is greater.

> (b) CIVIL ACTIONS.—A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

(Emphasis added.)

¶13 Case law confirms the plain meaning of the statute. A civil action is available only if the purchaser establishes that the transferor acted with intent to defraud. *E.g., Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1282 (10th Cir. 1998).

¶14 The trial court found that Cherry Lane did not act with intent to defraud and, thus, denied recovery under the statute. Mr. Quinn argues that the dealership's actual knowledge of the correct odometer reading should be imputed to its sales staff and that intent to defraud should then be found as a matter of law. While we agree that

knowledge can be imputed to the sales staff, we disagree that this court can find fraudulent intent as a matter of law. The basic problem with appellant's argument is that it is directed to the wrong court.

¶15 Intent is a factual determination. "Whether one intended, at a specified time, to defraud another of his property is a question of fact to be resolved by the trier of the facts." *State v. Konop*, 62 Wn.2d 715, 718, 384 P.2d 385 (1963); *accord State v. Etheridge*, 74 Wn.2d 102, 109, 443 P.2d 536 (1968); *State v. Bryant*, 73 Wn.2d 168, 171, 437 P.2d 398 (1968); *State v. Smithers*, 67 Wn.2d 666, 669, 409 P.2d 463 (1965).

¶16 The trial court's verdict here brings into play very well-settled law. The function of the appellate court is to review the action of the trial courts. Appellate courts do not hear or weigh evidence, find facts, or substitute their opinions for those of the trier-of-fact. Instead, they must defer to the factual findings made by the trier-of-fact. *See, e.g., Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 572, 575, 343 P.2d 183 (1959). "Judgment as to the credibility of witnesses and the weight of the evidence is the exclusive function of the jury." *State v. Smith*, 31 Wn. App. 226, 228, 640 P.2d 25 (1982).

¶17 It is one thing for an appellate court to review whether sufficient evidence supports a trial court's factual determination. That is, in essence, a legal determination based upon factual findings made by the trial court. In contrast, where a trial court finds that evidence is insufficient to persuade it that something occurred, an appellate court is simply not permitted to reweigh the evidence and come to a contrary finding. It invades the province of the trial court for an appellate court to find compelling that which the trial court found unpersuasive. Yet, that is what appellant wants this court to do. There was conflicting evidence in this case. The trial judge weighed that conflicting evidence and chose which of it to believe. That is the end of the story.

¶18 The testimony at trial with respect to intent to defraud illustrates the matter. There was testimony that sales personnel did not have access to internal dealer information about a vehicle. Coupled with evidence that the dealership disclosed an incorrect reading, a trier-of-fact justifiably could infer that Cherry Lane management intended to defraud a purchaser by keeping its own sales staff in the dark about the correct mileage.

¶19 There was also evidence to the contrary. Immediately upon discovering the error, Cherry Lane attempted to contact Mr. Quinn and the bank handling the financing. Its actions in disclosing the problem and offering alternatives to Mr. Quinn could easily convince a trier-of-fact that only an innocent error occurred and that Cherry Lane was not trying to benefit from the incorrect mileage reading.

¶20 The trial court accepted the second scenario. It was entitled to do so. More importantly, this court is not entitled to second-guess that determination. *Thorndike*, 54 Wn.2d at 572.

*State Odometer Statutes*

¶21 Several sections of the motor vehicle code prohibit actions taken to alter odometer readings or sell a car without disclosing that an odometer has been replaced. RCW 46.37.540-.570. A private right of action is created by RCW 46.37.590. The trial court decided that Mr. Quinn had not shown that Cherry Lane violated the statutes because it did not act with knowledge of the odometer error and did not intend to defraud him. The court also concluded that the statutes were not violated because no sale of the vehicle took place. Clerk's Papers (CP) 84.

¶22 Mr. Quinn challenges these conclusions, arguing first that no intent to defraud element exists in the state odometer statutes. We agree.

¶23 RCW 46.37.540(2) states, "It shall be unlawful for any person to disconnect, turn back, turn forward, or reset the odometer of any motor vehicle with the intent to

change the number of miles indicated on the odometer gauge." On its face, the statute requires proof of the intent to change numbers; it does not require proof of intent to defraud.

¶24 RCW 46.37.550 provides:

It shall be unlawful for any person to sell a motor vehicle in this state if such person has knowledge that the odometer on such motor vehicle has been turned back and if such person fails to notify the buyer, prior to the time of sale, that the odometer has been turned back or that he has reason to believe that the odometer has been turned back.

¶25 This court has previously concluded, in a criminal prosecution, that there is no intent to defraud element in this statute. *State v. Waldenburg*, 9 Wn. App. 529, 531-532, 513 P.2d 577, *review denied*, 83 Wn.2d 1002 (1973); *State v. Rentfrow*, 15 Wn. App. 837, 841, 552 P.2d 202 (1976), *review denied*, 88 Wn.2d 1007 (1977).

¶26 RCW 46.37.560 appears to be the most directly applicable statute to this case:

It shall be unlawful for any person to sell a motor vehicle in this state if such person has knowledge that the odometer on such motor vehicle has been replaced with another odometer and if such person fails to notify the buyer, prior to the time of sale, that the odometer has been replaced or that he believes the odometer to have been replaced.

This statute, like section .550, requires only that a person act knowingly. As with that statute, we see no basis for reading an implicit intent to defraud element into this section. To the extent that it required such proof, the trial court erred. However, the trial court also based its determination on the failure to prove the knowledge element required by the statutes.

¶27 RCW 46.37.590 provides a civil cause of action against a seller of a vehicle:

In any suit brought by the purchaser of a motor vehicle against the seller of such vehicle, the purchaser shall be entitled to

recover his court costs and a reasonable attorney's fee fixed by the court, if: (1) The suit or claim is based substantially upon the purchaser's allegation that the odometer on such vehicle has been tampered with contrary to RCW 46.37.540 and 46.37.550 or replaced contrary to RCW 46.37.560; and (2) it is found in such suit that the seller of such vehicle or any of his employees or agents knew or had reason to know that the odometer on such vehicle had been so tampered with or replaced and failed to disclose such knowledge to the purchaser prior to the time of the sale.

¶28 This statute in essence requires proof of a violation of sections .540, .550, or .560, and a knowing failure to disclose information about the odometer change. In addition to finding that Cherry Lane did not intend to defraud Mr. Quinn, the court also concluded that it "did not have either actual or constructive knowledge of the odometer discrepancy" when it offered the vehicle for sale. CP 84.

¶29 Mr. Quinn argues vigorously that Cherry Lane had in its possession evidence of the vehicle's actual mileage and, thus, was in violation of the statute. We agree that the evidence would have permitted the trier-of-fact to reach such a conclusion. Some personnel at Cherry Lane knew that the Silverado had a new odometer with a different mileage figure. The sales personnel, however, did not.

¶30 As with the previous issue, the question here is not what this court believes. The actual question is what the trier-of-fact believed. Whether or not someone acted knowingly is a factual question for the trier-of-fact. *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 134 Wn.2d 356, 371, 950 P.2d 451 (1998); *Everest v. Levenson*, 15 Wn. App. 645, 648, 551 P.2d 159, *review denied*, 87 Wn.2d 1011 (1976). The trial judge was not persuaded that Cherry Lane acted knowingly when it sold the Silverado with significantly understated mileage. As with the factual question of intent, that factual determination cannot be reweighed in this forum. *Thorndike*, 54 Wn.2d at 572; *Smith*, 31 Wn. App. at 228. Mr. Quinn's failure to prove this point at trial is binding in this appeal. He did not establish a violation of RCW 46.37.590.

¶31 The trial court also concluded that the statute was not violated because the "sale" was not completed.[3] The court determined that Mr. Quinn had not lived up to his bargain because he failed to produce four operable vehicles with clear titles and failed to obtain financing. In essence, he did not pay for the Silverado because he did not complete his down payment (the four cars constituted two-thirds of the down payment) and was not able to finance the balance when the odometer problem came to light.[4]

¶32 Failure to perform a condition precedent will discharge the duties of the parties to a contract. *Thatcher v. Salvo*, 128 Wn. App. 579, 586, 116 P.3d 1019 (2005); *CHG Int'l, Inc. v. Robin Lee, Inc.*, 35 Wn. App. 512, 514-515, 667 P.2d 1127, *review denied*, 100 Wn.2d 1029 (1983); *Local 112, I.B.E.W. Bldg. Ass'n v. Tomlinson Dari-Mart, Inc.*, 30 Wn. App. 139, 142-143, 632 P.2d 911, *review denied*, 96 Wn.2d 1017 (1981). Here, one of the conditions precedent to completing the sale involved Mr. Quinn making his down payment and financing the balance. That did not occur for very understandable reasons. Nonetheless, the failure to perform these conditions meant that this sale was not completed. The trial court did not err in so concluding.

¶33 For the additional reason that there was no sale, there also was no violation of RCW 46.37.590.

*Auto Dealer Practices Act*

¶34 Mr. Quinn also argues that Cherry Lane violated RCW 46.70.180, a statute that outlaws numerous improper practices by car dealers, in four different ways. Once again, the basic problem in this appeal is that the trial court did not find his claims persuasive.

---

[3] The trial court also concluded that the parties mutually rescinded the contract due to the odometer mistake. We need not address that issue in light of our resolution of the other issues.

[4] In fairness to Mr. Quinn, it is understandable that he put his payment obligations on hold once the original deal fell apart. Nonetheless, he is the one arguing that there was a completed sale, so his performance under the contract must be reviewed.

¶35 RCW 46.70.027 provides a right of action to any retail vehicle purchaser who has "suffered a loss or damage" because of a violation of chapter 46.70 RCW.[5] RCW 46.70-.180(5) essentially repeats RCW 46.37.590 by making it unlawful to commit offenses relating to odometers under RCW 46.37.540-.570.[6] Mr. Quinn's claim under this statute fails for the same reasons the RCW 46.37.590 claim failed in the trial court—he did not prove that Cherry Lane acted knowingly and he did not prove that a sale took place.

¶36 Mr. Quinn also alleges that Cherry Lane violated RCW 46.70.180(1) and (2) by not including all financing information in one document and by including the false odometer reading in the sales paperwork. The trial court's sole conclusion on these claims simply states that Mr. Quinn "failed to prove a violation by preponderance of the evidence." CP 86.[7] As we stated previously, this court cannot reweigh the evidence and reach a different conclusion than the trial court. *Thorndike*, 54 Wn.2d at 572.

¶37 Finally, Mr. Quinn alleges that Cherry Lane converted his personal property when it repossessed the Silverado and did not return the personal property therein to him. RCW 46.70.101 provides that a dealer's license may be suspended or revoked for various improper practices, including conversion of a customer's personal property. Mr. Quinn also pleaded a common law conversion claim.

¶38 The trial court also found this claim unproven. CP 85-86. That was understandable. Mr. Quinn refused to claim the property at the dealership once it was inventoried and removed from the Silverado. Cherry Lane

---

[5] In light of the trial court's ruling on the persuasiveness of the evidence, we do not address whether or not Mr. Quinn also showed that he suffered damage or loss.

[6] This subsection also makes it a class C felony to tamper with odometers.

[7] Mr. Quinn also argues that the trial court ruled as a matter of law that financing statements could be in multiple documents, citing to CP 53. That is not correct. CP 53 references the trial court's discussion of whether the sales agreement was a fully integrated agreement or not. It does not discuss the financing paperwork claim.

made no efforts to do anything with the property other than preserve and return it. The fact that Mr. Quinn declined to retrieve it did not show that Cherry Lane made the property its own.

¶39 The auto dealer practices act claims were not proven. This court cannot reweigh the evidence and conclude otherwise.

*Consumer Protection Act*

¶40 The trial court concluded that because the odometer statutes were not violated, there also was no deceptive practice under the Consumer Protection Act (CPA), chapter 19.86 RCW. We agree.

¶41 "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. A person injured by a violation of RCW 19.86.020 or other sections of chapter 19.86 RCW may bring a civil action for damages. RCW 19.86.090.

¶42 The elements of a CPA violation under that section are (1) an unfair or deceptive act or practice (2) in trade or commerce, (3) which affects the public interest, (4) injury to the plaintiff, and (5) a causal link between the unfair or deceptive act and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 784-785, 719 P.2d 531 (1986). A violation of chapter 46.70 RCW constitutes a violation of the CPA. RCW 46.70.310.

¶43 Finding no violation of chapter 46.70 RCW, the trial court concluded that no violation of the CPA was established. That is correct. In the absence of a proven deceptive act in violation of the chapter, elements one and three of the *Hangman Ridge* test are not satisfied. In view of that, there is no need to discuss whether elements four and five were proven or not.

¶44 The trial court correctly concluded that the CPA was not violated.

## CONCLUSION

¶45  The trier-of-fact concluded it was not satisfied with the evidence supporting the claim that Cherry Lane knowingly violated state and federal statutes governing odometers and/or financing statements. While there was competing evidence that would have permitted contrary results, this court does not reweigh evidence and substitute its judgment for that of the trier-of-fact. Accordingly, the judgment of the trial court is affirmed.

BROWN, J., concurs.

¶46  SCHULTHEIS, C.J. (dissenting) — Cherry Lane Auto Plaza Inc. completed and signed an odometer disclosure statement that certified the mileage of the truck it sold to Rob Quinn was accurate based only on the odometer reading. No attempt was made to look at any other resources available to the dealership, which would have revealed that the truck's odometer had been replaced and reflected a mileage of about one-third of the truck's actual mileage. The dealership's practice of merely recording the odometer reading when certifying mileage to be accurate without checking other resources available to the dealership violates federal statutes as a matter of law. Moreover, the dealership violated state statutes when it failed to inform Mr. Quinn at the time he entered into the sales contract that the odometer was replaced and when it misrepresented the actual mileage.

¶47  The majority holds that determinations to the contrary were made by the trier of fact based on its appraisal of the evidence and credibility of the witnesses, and the facts it chose to find. Mr. Quinn did not dispute the factual findings—the persuasiveness of the evidence and credibility of the witnesses are unimportant to the legal issue of whether the statutes were violated. Because the issues in this case

must be resolved by interpreting and applying statutes to undisputed facts, the issues are most appropriately resolved by this court as a matter of law. I must therefore respectfully dissent.

## Standard of Review

¶48 The trial court made exhaustive findings of fact, which Mr. Quinn does not challenge. This court reviews de novo the trial court's interpretation and application of a statute to undisputed facts. *Heller v. McClure & Sons, Inc.*, 92 Wn. App. 333, 337, 963 P.2d 923 (1998).

## Federal Odometer Act

¶49 The federal odometer act provides for a private cause of action against a person transferring ownership of a vehicle who, "with intent to defraud," gives a false statement to the transferee in making a required odometer disclosure. 49 U.S.C. §§ 32710(a), 32705(a)(2). When we construe a federal statute, we start with the plain language of the statute to determine congressional intent, including its object and policy. *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35, 110 S. Ct. 929, 108 L. Ed. 2d 23 (1990). This court is bound by the construction of a federal statute placed upon it by the Supreme Court of the United States. *S.S. v. Alexander*, 143 Wn. App. 75, 92, 177 P.3d 724 (2008) (quoting *N. Pac. Ry. v. Longmire*, 104 Wash. 121, 125, 176 P. 150 (1918)). We have greater latitude when analyzing a decision of a federal appellate court, which is entitled to great weight but is not binding if we deem it illogical or unsound. *Id.* (quoting *Home Ins. Co. of N.Y. v. N. Pac. Ry.*, 18 Wn.2d 798, 808, 140 P.2d 507 (1943)).

¶50 The federal odometer act is remedial legislation that should be "broadly construed to effectuate its purpose." *Ryan v. Edwards*, 592 F.2d 756, 760 (4th Cir. 1979). The act is aimed at not only preventing odometer tampering and odometer fraud but also providing safeguards to protect purchasers in the sale of motor vehicles with altered or reset

odometers.[8] 49 U.S.C. § 32701(b). "[T]he Act is intended to prohibit the giving of false odometer statements even by those who had nothing to do with changing the odometers." *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1252 (8th Cir. 1983).

¶51 Moreover, based on the legislative history of the disclosure legislation, "Congress clearly wanted each transferor to prepare as accurate a disclosure statement as possible, even if the person had no role in odometer tampering." *Id.* This means that a dealership's employees must use those materials at the transferor's disposal. "Mere reliance on the odometer reading, in the face of other readily ascertainable information . . . constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law." *Aldridge v. Billips*, 656 F. Supp. 975, 978-79 (W.D. Va. 1987).

¶52 In this case, the dealership provided a disclosure statement, which was signed by Tim McKenna as an agent of the dealership, certifying the mileage of the vehicle being sold was 26,814. This mileage is incorrect. The trial court concluded that Mr. McKenna and the dealership were each transferors under 49 U.S.C. § 32710 and, therefore, potentially subject to liability under the federal odometer act.[9] But the trial court also concluded that Mr. McKenna and the dealership, in certifying the disclosure statement, did so

---

[8] As a preface to the expression of purpose, Congress made the following findings: "(1) buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle; (2) buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle; (3) an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and (4) motor vehicles move in, or affect, interstate and foreign commerce." 49 U.S.C. § 32701(a).

[9] A "transferor" is "any person who transfers his ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor." 49 C.F.R. § 580.3. Although not specifically stated in its findings and conclusions, the court implicitly found that Mr. Quinn was a transferee. *See* 49 C.F.R. § 580.3 (providing that a "transferee" is "any person to whom ownership of a motor vehicle is transferred, by purchase, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferee"). In any event, the dealership does not claim Mr. Quinn is not a transferee.

without an intent to defraud Mr. Quinn and had neither actual nor constructive knowledge that the odometer was inaccurate at the time the odometer statement was completed.

¶53 The vast majority of courts that have addressed the intent to defraud requirement of 49 U.S.C. § 32710 have rejected a construction of the statute that would require proof of actual knowledge. *Auto Sport Motors, Inc. v. Bruno Auto Dealers, Inc.*, 721 F. Supp. 63, 65 (S.D.N.Y. 1989) (citing cases). Instead, though a showing of mere negligence is insufficient, the intent to deceive may be shown by constructive knowledge, recklessness, or gross negligence in determining and disclosing actual mileage.[10] *Ryan*, 592 F.2d at 762.

¶54 The trial court in this case found that Mr. McKenna had no actual knowledge of the mileage discrepancy when he signed the odometer disclosure statement, and had no knowledge of the previous problems associated with the vehicle's instrument cluster. The trial court acknowledged that the intent to deceive can be proved through recklessness or gross negligence. But it held that under the facts, "This conduct is clearly not within the category of recklessness or gross negligence." Clerk's Papers (CP) at 51. This is an erroneous conclusion under the undisputed facts of this case.

¶55 The dealership's "internal computer records and a hand written [sic] inventory in the deal jacket for the

---

[10] *E.g., Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1282 (10th Cir. 1998); *Tusa*, 712 F.2d at 1253; *Diersen v. Chi. Car Exch.*, 110 F.3d 481, 488 (7th Cir. 1997); *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978). State courts that have examined this issue have followed suit. *E.g., Hinson v. Eaton*, 322 Ark. 331, 908 S.W.2d 646, 647-49 (1995); *Spencer v. Dupree*, 150 Ga. App. 474, 258 S.E.2d 229, 231-32 (1979); *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 159 Ill. App. 3d 237, 253, 511 N.E.2d 1330, 111 Ill. Dec. 35 (1987); *Stepp v. Duffy*, 654 N.E.2d 767, 772-73 (Ind. Ct. App. 1995); *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 226 (Iowa 1998); *Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d 118, 79 P.3d 1081, 1090 (2003); *DeLong v. Hilltop Lincoln-Mercury, Inc.*, 812 S.W.2d 834, 845 (Mo. Ct. App. 1991); *Kerr v. A&G Auto, Inc.*, 2000 OK CIV APP 6, 996 P.2d 483, 486; *Carroll Motors, Inc. v. Purcell*, 273 S.C. 745, 259 S.E.2d 604, 606 (1979); *Christianson v. Lease Assocs.*, 87 Wis. 2d 123, 273 N.W.2d 776, 778 (Ct. App. 1978); *Harden v. Gregory Motors*, 697 P.2d 283, 287 (Wyo. 1985); *see also* 7A AM. JUR. 2D *Automobiles* § 197 (2007) (citing cases).

vehicle documented the correct mileage for the vehicle, but this information was not accessible to the sales staff, according to Cherry Lane internal business practices." CP at 79 (Finding of Fact 17). And it is a common industry standard for such internal documents to be inaccessible to sales people. Mr. McKenna relied on the mileage provided by the salesman, which the salesman obtained from the odometer, for the purposes of certifying the mileage. It is also a common industry standard to determine accurate mileage for the purpose of the odometer disclosure statement by simply looking at the odometer.

¶56 Such practices, regardless of their popularity, render the odometer act and its regulations meaningless. Significantly, 49 C.F.R. § 580.5(e)(3), states:

> If the transferor knows that *the odometer reading differs from the mileage and that the difference is greater* than that caused by odometer calibration error, he shall *include a statement that the odometer reading does not reflect the actual mileage,* and should not be relied upon. This statement shall also *include a warning notice* to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage.

(Emphasis added.)

¶57 A transferor cannot satisfy the obligation to disclose and warn the transferee of potential odometer irregularities by merely looking at the odometer and disregarding other relevant information. *See* 49 C.F.R. § 580.5(e)(2)-(3). Indeed, "[t]he federal odometer law imposes an affirmative duty on automobile dealers to discover defects." *Haynes v. Manning,* 917 F.2d 450, 453 (10th Cir. 1990); *Stepp v. Duffy,* 654 N.E.2d 767 (Ind. Ct. App. 1995). In this context, intent to deceive or reckless disregard for the accuracy of the disclosure can be established as a matter of law. *E.g., Aldridge,* 656 F. Supp. at 978-79.

¶58 Moreover, the credibility determinations made by the trial court relate to Michael Lilley's intent that the truck not be sold until the instrument cluster was installed and the odometer adjusted, Mr. McKenna's discussions

with Mr. Quinn after the misrepresentation was discovered, and the negotiations regarding the purchase of the truck as it relates to Mr. Quinn's trade-ins. None of these facts has any bearing on the diligence required by the transferor when certifying the accuracy of mileage on the odometer statement. The odometer act requires more than merely recording the odometer reading.

¶59 For instance, in *Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978), the court held that the dealer should have checked the box on the disclosure statement that stated, " 'I further state that the actual mileage differs from the odometer reading for reasons other than odometer calibration error and that the actual mileage is unknown.' " This is true even though two previous dealers certified the odometer reading as 14,290 miles and failed to certify that the actual mileage was unknown. The dealer should have known, and was required to disclose, that the mileage was unknown.

¶60 It was irresponsible for the dealership in this case to institute a practice to dummy-down the sales staff—the very people making representations to potential buyers—by limiting the sales staff's access to materials that would enable them to make accurate representations. It is disingenuous for the dealership to then complain that it cannot be held liable for the lack of information available to its sales staff. The fact that this practice is common in the trade only shows an industry pattern of creating a loophole to avoid liability.

¶61 Moreover, neither the trial court's findings nor the acceptance of this practice explains why the "deal jacket" or computer files that contained the pertinent odometer information were not examined by the individual signing the odometer disclosure statement, Mr. McKenna, who was both the finance manager and the acting general manager of the dealership in Mr. Lilley's absence. As aptly said by one court, "One may not consciously avoid learning that the true mileage of a vehicle is not as it appears on the odometer." *Auto Sport Motors*, 721 F. Supp. at 66; *see Suiter*

*v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1282 (10th Cir. 1998) (holding that a transferor who has reason to know that the odometer reading is inaccurate, based on readily ascertainable information in the chain of title, cannot close his eyes to the truth); *Haynes*, 917 F.2d at 453.

¶62 The trial court found that, given the good condition of the Silverado, an odometer reading of 26,814 miles would not be enough to raise suspicion that the mileage was inaccurate. Courts have imputed an intent to deceive when dealers should have been suspicious of the mileage based on the vintage and condition of the vehicle. *Nieto*, 578 F.2d 640. Regardless of the condition of the Silverado, the odometer act requires more of a transferor than to merely look at the odometer when certifying mileage. 49 C.F.R. § 580.5(e)(3). This point is well illustrated in *Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328, 1336 (D. Conn. 1977).

¶63 In *Jones* the court rejected the dealership's claim that the failure to inform the buyer of an odometer irregularity was an innocent clerical error. *Id.* at 1332, 1335. The dealership explained at trial that an inexperienced office worker misfiled the original odometer statement signed by the prior owner, so that any subsequent reference to the file would not reveal that there was a problem with the car's mileage. *Id.* at 1332. The absence of the odometer disclosure statement in the file "should have led the individual charged with certifying the new [odometer disclosure s]tatement to launch an inquiry into the true facts." *Id.* at 1335.

¶64 The court noted the affirmative duty upon automobile dealers to discover defects and concluded that "[i]t is no defense to assert that defects in the design or supervision of the dealership's record-keeping system were responsible for the misrepresentation in this case." *Id.* at 1336. The court emphasized that "[w]hat is more important . . . is that the maintenance of a thorough, well-supervised record-keeping system with respect to [odometer disclosure s]tatements is a clear, implicit requirement of the [odometer act]." *Id.* The court suggested that at a minimum the dealership require

"that sales personnel read and accurately represent to prospective purchasers the content of an automobile's file, and that [odometer disclosure s]tatements be certified only upon the basis of back-up information actually available in the file." *Id.*

¶65 The *Jones* court pointed out that fraudulent intent for the purpose of imposing civil liability may be proved when a defendant's statements were made "recklessly or carelessly, without knowledge of their truth or falsity, or without reasonable grounds for belief in their truth." *Id.* at 1334.

¶66 Here, the trial court found that at the time of the transaction, Mr. McKenna had access to the documentation on the correct mileage. The trial court nonetheless did not find significant the fact that Mr. McKenna did not even look at the file regarding the Silverado. Instead, the trial court implicitly held that the federal odometer act requires no more of the transferor when certifying the mileage than to accept secondhand information that the mileage is accurate based on the odometer reading. This is incorrect as a matter of law. *See Terry v. Whitlock*, 102 F. Supp. 2d 661, 662-63 (W.D. Va. 2000); *Aldridge*, 656 F. Supp. 975.

¶67 The trial court here further found that Mr. Quinn did not request independent verification of the vehicle's mileage. And the dealership points out that Mr. Quinn never questioned the miles on the vehicle, which might have prompted Mr. McKenna to inquire further. Mr. Quinn is not the party obligated under the odometer act. The transferee has a right to rely on the accuracy of the odometer disclosure statement as certified by the transferor. In effect, the disclosure statement is meant to be verification of the accuracy of the odometer reading.

¶68 It is unfortunate that Mr. Lilley suffered a heart attack. Had he not been absent from work, the misrepresentation might not have occurred. But Congress mandated the institution of standardized record-keeping procedures. 49 U.S.C. § 32706. Dealerships must retain for five years odometer mileage statements that they issue and receive

"in an order that is appropriate to business requirements and that permits systematic retrieval." 49 C.F.R. § 580.8(a). The fact that such illnesses occur only reinforces the need for Mr. Lilley to establish adequate control systems. The trial court's findings establish that such controls were fundamentally lacking at the dealership in this case. While errors can occur in even the best-managed record-keeping systems, the facts here do not present a close case. *Jones*, 427 F. Supp. at 1336.

*Auto Dealer Practices Act*

¶69 Mr. Quinn asserts that the dealership violated provisions of the Washington auto dealer practices act, chapter 46.70 RCW, entitling him to relief under this statute as well as the Consumer Protection Act, chapter 19.86 RCW. I agree that two violations occurred, which triggered relief under both acts.[11]

¶70 First, Mr. Quinn claims violations of the dealer practices act by the dealership's contravention of the odometer repair and replacement statute. *See* RCW 46.70.180(5).

¶71 RCW 46.37.560 makes it unlawful "for any person to *sell a motor vehicle* in this state if such person has *knowledge* that the odometer on such motor vehicle has been replaced with another odometer and if such person fails to notify the buyer, prior to the time of sale, that the odometer has been replaced or that he believes the odometer to have been replaced." (Emphasis added.)

¶72 The trial court found that finance manager/acting general manager "Mr. McKenna had no actual knowledge of the mile discrepancy when he signed the odometer disclosure statement, and had no knowledge of the previous problems associated with the vehicle's instrument cluster"

---

[11] RCW 46.70.027 provides a cause of action for "[a] retail purchaser ... who has suffered a loss or damage by reason of any act by a dealer, salesperson, managerial person, or other employee of a dealership, that constitutes a violation of [the dealer practices act] for recovery against the dealer and the surety bond as set forth in RCW 46.70.070." Further, "[a]ny violation of [chapter 46.70 RCW] is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW [the Washington Consumer Protection Act]." RCW 46.70.310.

when he allowed Mr. Quinn to take possession of the Silverado. CP at 81 (Finding of Fact 26). The trial court therefore concluded that the dealership did not violate the state odometer statutes because "Cherry Lane, its agents and employees did not have either actual or constructive knowledge of the odometer discrepancy or an intent to defraud by offering the vehicle for sale." CP at 84. The trial court did not properly apply the statute.[12] Mr. Lilley's knowledge of the odometer replacement is dispositive.

¶73 As a dealer, Mr. Lilley "is accountable for the dealer's employees, sales personnel, and managerial personnel while in the performance of their official duties." RCW 46.70.027. Mr. Lilley knew that the odometer had been replaced. The dealership and its employees sold the Silverado in that condition.[13] Mr. Lilley is responsible for the sale being made when he knew that the odometer was replaced and the buyer was not so informed. RCW 46.37.560.

¶74 The trial court further concluded that, because the sales transaction was not complete, the dealership did not "sell a motor vehicle" as is required to trigger a violation under RCW 46.37.560. The trial court used contract principles to determine whether a sale had occurred. This is an issue of statutory construction.

---

[12] Mr. Quinn argues that the language "knowledge or intent to defraud" in the court's conclusion shows that the trial court misconstrued the state statutes and imposed an intent requirement to go along with the knowledge element. The dealership argued before the trial court (and continues to argue on appeal) that all the statutes in the dealer practices act are triggered only upon a finding of deceitful motivation. It does not appear that the trial court fully adopted the dealership's view. The relevant conclusion uses "or" to separate knowledge and intent to defraud. Obviously, if Mr. Quinn had shown that there was an intent to defraud, knowledge would also logically be present. The surplus language is unnecessary, but not necessarily significant.

[13] The statute makes it unlawful for "any *person* to sell a motor vehicle" when "such *person* has knowledge" that the odometer has been replaced and does not disclose it to the buyer. RCW 46.37.560 (emphasis added). Included in the definition of "person" is "every natural person, firm, copartnership, corporation, association, or organization." RCW 46.04.405; *see* RCW 46.04.010 (providing that terms defined in chapter 46.04 RCW apply to the terms used in Title 46 RCW unless they are otherwise specifically defined).

¶75 If a statute's meaning is plain on its face, then we must give effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Under the plain meaning rule, such meaning is derived from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Id.* at 11-12. We construe statutes to effect their purpose and avoid unlikely or absurd results. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

¶76 RCW 46.37.560 makes it unlawful "to sell a motor vehicle" when the dealer has knowledge that the odometer has been replaced and does not disclose it to the buyer. The term "sell" is not defined within the statute. When a word has a well-accepted, ordinary meaning, we turn to a regular dictionary for its meaning. *City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue*, 145 Wn.2d 445, 454, 38 P.3d 1010 (2002). Here, the dictionary provides seven definitions for "sell" as a transitive verb as it is used in this context. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2061 (1993). It is therefore not particularly helpful.

¶77 In enacting the statutory scheme, the legislature found that "the distribution, sale, and lease of vehicles in the state of Washington vitally affects the general economy of the state and the public interest and the public welfare." RCW 46.70.005. Therefore, regulations were needed "in order to promote the public interest and the public welfare ... and ... in order to prevent frauds, impositions, and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." *Id.* The legislature required that the provisions of the dealer practices act "shall be liberally construed to the end that deceptive practices or commission of fraud or misrepresentation in the sale, lease, barter, or disposition of vehicles in this state may be prohibited and prevented." RCW 46.70.900.

¶78 Given the legislature's broad concerns and mandate that the legislation be afforded liberal construction to the end of preventing any type of misrepresentation, it is

proper to define "sell" broadly and liberally to include contracting for a sale, which occurred here. It is not reasonable to conclude that the legislature meant for a car dealer to avoid the reach of the law merely because the sale of a misrepresented vehicle had not fully concluded. This is especially true in this case where the dealership took affirmative action to invalidate the transaction by recalling the financing.

¶79 The trial court also concluded that the dealership did not "sell" the car as required by RCW 46.37.560 because the sales contract was not fully integrated and the sale was not consummated because performance was not complete, which required consideration and conditions precedent. Alternatively, the court concluded that there was a mutual rescission of the sales contract. These contractual defenses are wholly irrelevant to this statutory claim. Mr. Quinn is "[a] retail purchaser . . . who has suffered a loss or damage by reason of any act by a dealer, salesperson, managerial person, or other employee of a dealership, that constitutes a violation of this chapter [and] may institute an action for recovery against the dealer."[14] RCW 46.70.027, .070(1). I would hold that Mr. Quinn may recover such losses or damages.

¶80 It is particularly unreasonable to excuse the dealership's misrepresentation here on its claim that Mr. Quinn did not fully perform when the dealership's performance was complete and included the offending misrepresentation. To hold otherwise would create a loophole, encouraging dealers to craft their sales contracts to take advantage of and avoid responsibility under the dealer practices act. This would dishonor the legislative mandate

---

[14] The dealership does not claim that Mr. Quinn is not a "retail purchaser" under RCW 46.70.070(1). The term "purchaser" is not defined by the statute. Nonetheless, that term should be similarly broadly defined. *See also* RCW 46.70.180 (using the terms "prospective purchaser" and "purchaser" interchangeably, as well as the terms "prospective buyer" and "buyer"); *Brittingham Leasing Corp. v. Szymanski*, 53 Wn. App. 251, 256, 766 P.2d 495 (1989) (holding that a retail purchaser is a buyer who is the final user of the goods, as distinguished from a middleman or a purchaser who plays a wholesale role).

to construe liberally the provisions of the act to prevent misrepresentation.

¶81 If the legislature wished to limit the definition of "sell" to mean that the contractual obligations of the parties had been met, it would have done so. In fact, a statute within the dealer practices act so limited the definition of "delivery" of a mobile home within the act to require that "[t]he contractual obligations between the purchaser and the seller have been met." RCW 46.70.135(5).

¶82 Moreover, since the statute includes in its purpose the desire to prevent "impositions . . . upon the citizens," Mr. Quinn is a member of the class of persons the statute was meant to protect. RCW 46.70.005. The events that unfolded were caused by the dealership's misrepresentation of the mileage on the vehicle Mr. Quinn purchased and made worse by the dealership's recall of the financing and repossession of the Silverado, which actions the dealership evidently believed would permit it to avoid responsibility under the law.

¶83 Mr. Quinn also asserts that the dealership violated RCW 46.70.180(2)(a) by falsely representing in the sale agreement that the Silverado had 26,814 miles when it did not. Although Mr. Quinn raised this issue in his trial brief, the trial court did not directly address it in its memorandum decision or findings of fact and conclusions of law. Instead, the court concluded that Mr. Quinn "failed to prove a violation by preponderance of the evidence of the Dealer Practices Act and has likely failed to prove by the requisite degree of proof any violations of the Washington State Protection Act." CP at 100.

¶84 The sale agreement sets forth that the odometer reading is 26,814 miles. The true mileage was 84,901. The sales agreement incorporated into its terms a falsely represented mileage, which subjected the dealership to liability under RCW 46.70.180(2)(a) of the dealer practices act. *See* RCW 46.70.027.

*Attorney Fees*

¶85 Finally, I would grant Mr. Quinn his attorney fees and costs on appeal under the dealer practices act, Consumer Protection Act, and federal odometer act. RCW 46.70.190; RCW 19.86.090; 49 U.S.C. § 32710; *see* RAP 18.1; *State v. Farmers Union Grain Co.*, 80 Wn. App. 287, 296, 908 P.2d 386 (1996).

Review denied at 168 Wn.2d 1041 (2010).