IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIA MACHADO, | ) | |
| | ) | No. 31496-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — The Industrial Appeals Judge (IAJ) determined that appellant Maria Machado was not an employee of Lyall Farms at the time she suffered an injury while picking cherries. The superior court affirmed that determination. Because the record supports the IAJ's factual determination, we also affirm.

## FACTS

Lyall Farms has cherry orchards in Yakima County. When the cherries are ripe, large numbers of workers descend upon the farm to pick the entire crop. The pickers register with the farm after showing appropriate identification and receive a picker number. The number allows the farm to determine how much to pay the picker at the end of the harvest based on the amount of cherries picked. With the number the farm also assigns each registered picker a ladder for use in the harvest and a bin to collect the

worker's cherries. The ladder is left in the orchard to mark the spot where the picker

must begin work the next day. Each worker's pay is dependent upon the quantity of

cherries in the worker's bin.

The large number of workers arriving at the same time necessarily creates a back-

up at registration. Rather than face diminished picking time while awaiting registration,

it is not uncommon for unregistered workers to begin work by partnering with someone

who already has a number and split the proceeds from that day's efforts. The

unregistered worker would then obtain a number later in the harvest and begin working

with his or her own bin and ladder. One long-time harvester, Rosa Rivera, testified that

Lyall Farms allowed this process to take place when it was done with their express

knowledge and permission.

The 2006 harvest at Lyall Farms took place over an eight day period at the end of

June and the beginning of July. Maria Rodriguez, Ms. Machado's daughter-in-law,

registered as a picker and received a number on the first day of the harvest. She worked

the entire harvest period. On the third day, Ms. Machado joined the harvest. However,

she did not register and receive her own number. Instead, Ms. Machado worked with Ms.

Rodriguez and placed the cherries she picked in the bin associated with her daughter-in-

law's number. The two women agreed to split the proceeds of that day's picking. Ms.

Rodriguez would later testify that the arrangement was intended to be temporary until her

mother-in-law obtained her own number.

The arrangement continued through at least[1] the next day. Ms. Machado used a ladder belonging to another worker who was not at the harvest that day and continued to put the cherries she picked in Ms. Rodriguez's bin. During the day Ms. Machado fell from the ladder and suffered significant injuries. A member of the Lyall family took her to the hospital.

Ms. Machado was unable to return to the harvest. Two weeks later she filed a claim for industrial insurance benefits. The Department of Labor and Industries (Department) denied the claim because Ms. Machado could not substantiate her claim that she worked for Lyall Farms. After the Department affirmed its decision, she then appealed to the Board of Industrial Insurance Appeals (Board).

In addition to the previously referenced facts, the IAJ also heard testimony about a Lyall Farms supervisor, Miguel Barajas, who had hiring authority over the pickers. Ms. Machado testified that he saw her at work and talked to her in his role as a field supervisor for the harvest. She also testified that Mr. Barajas told her to keep picking and that he would have someone bring her the registration paperwork. However, Frank Lyall testified that it was not Barajas's job to check the pickers to see that they had a picker number.

---

[1] Ms. Machado testified the accident happened on her second day of work, while Ms. Rodriguez thought it was on the third or fourth day after her mother-in-law joined her. The IAJ did not make findings relevant to this discrepancy.

The IAJ, relying in large part upon the testimony of Ms. Rivera, found that Ms. Machado's testimony concerning the alleged conversation with Barajas was not credible. The IAJ also entered two additional significant findings. Finding of fact 4 stated that Ms. Machado did not report or seek to obtain registration paperwork. Finding of fact 5 determined that Lyall Farms was unaware that Ms. Machado was working on the farm or that she was working under Ms. Rodriguez's number. The finding also reflected that there was no mutual agreement to have an employer-employee relationship.

The IAJ also entered two conclusions of law that ruled that there was no employer-employee relationship under the Industrial Insurance Act, and affirmed the Department's order. The Board denied review of the IAJ's proposed ruling. Ms. Machado then appealed to superior court. The superior court determined that the findings were supported by the evidence and affirmed the Board's findings and conclusions in their entirety. Ms. Machado then timely appealed to this court.

## ANALYSIS

The sole issue presented by this appeal is whether the evidence supports the factual findings that Lyall Farms did not know that Ms. Machado was working and, hence, the legal conclusion that there was no employment relationship subject to the Industrial Insurance Act.

Well-settled standards govern our review of this case. As with other cases, the factual findings made by an IAJ are reviewed for substantial evidence. *Ruse v. Dep't of*

4

*Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999); *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). The legal conclusions that flow from the findings are reviewed de novo. *Id.* Substantial evidence means evidence that "is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu*, 168 Wn. App. at 21.

> Challenged finding of fact 4 states:
>
> Prior to her fall, Mrs. Machado did not report to the owner of Lyall Farms or any designated representative. She did not obtain permission, and did not show the necessary identification or complete the requisite paperwork to work at the orchard.

This finding finds support in the record. Ms. Machado's testimony itself supports nearly all of the elements of this finding—she did not report, provide her identification, or complete the paperwork. She does contend that Mr. Barajas knew she was working in the orchard and that he permitted her to continue to do so while awaiting someone to bring her the registration forms. However, the IAJ expressly found this aspect of her testimony to not be credible. Appellate courts do not weigh evidence and make evidentiary determinations; instead, we must defer to the trier of fact. *E.g., Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). In particular, credibility determinations simply cannot be disturbed. *Id.*

Accordingly, the rejection of Ms. Machado's testimony by the IAJ is largely dispositive of her argument against finding 4. Although it does not need to be supported

by evidence, the testimony of Ms. Rivera and Mr. Lyall supported a contrary view of the facts—Mr. Barajas was not in the business of supervising the registration of pickers nor did the farm take registration forms into the orchard to sign up pickers as they worked. Accordingly, we have no hesitancy in concluding that finding 4 was supported by substantial evidence.

Finding 5 provided:

> The employer was neither aware that Mrs. Machado was working at the orchard, nor that she entered into an arrangement to harvest cherries under Mrs. Rodriguez's designated number. There was no mutual agreement to establish an employer-employee relationship between the claimant and Lyall Farms.

This finding, too, was supported by the record.

Mr. Lyall testified that there was no record of Ms. Machado being assigned a picker number or otherwise being employed by the farm. Ms. Machado agreed that she had not registered. The fact that Ms. Machado was working without a number and using equipment assigned to other workers also inferentially supports this finding. We agree with the IAJ that under these facts it was reasonable to determine that the farm did not know Ms. Machado was working in the orchard and that it had not agreed to employ her. Finding 5 was supported by sufficient evidence.

From these findings[2] the court concluded that the parties had not agreed to an employer-employee relationship. For an employment relationship to exist under the Industrial Insurance Act, "mutual agreement must exist between the employee and the employer to establish an employee-employer relationship." *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979). Although the Department contends that several reasons exist to deny finding an employment relationship, the IAJ founded his decision on the lack of mutual assent. While Ms. Machado was picking cherries and otherwise behaving just as all of the other registered pickers were, the farm did not know that she was there and had not permitted her to pick. She presumably could have registered to pick, but she did not.

Given the supported factual findings that the farm did not know Ms. Machado was there, the conclusion that the farm and Ms. Machado had not jointly agreed to have an employment relationship necessarily follows. Thus, the challenged conclusions of law are adequately supported by the facts. Because she did not register and the farm did not know of or otherwise consent to her presence, there was no employment relationship between the two. The IAJ did not err in so concluding.

The judgment is affirmed.

---

[2] Ms. Machado also challenges finding 3 on the basis that it does not include an additional finding. As previously noted, this court cannot find facts. *Quinn*, 153 Wn. App. at 717. It was Ms. Machado's burden to persuade the IAJ, something she failed to

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                                              Knodell, J.P.T.

---

do. *See, e.g., State v. Davis*, 25 Wn. App. 134, 138, 605 P.2d 359 (1980) ("[T]he proponent of factual contentions has the burden of establishing those facts.").