IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Interest of | ) | |
| | ) | No. 36241-8-III |
| J.A.H.-I, | ) | |
| | ) | |
| a person under the age of eighteen. | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — A father, J.I., appeals from the termination of his parental rights to J.H.-I. in an action brought by the mother, J.J., and her husband. We affirm.

FACTS

The child was born in September 2009, shortly after the father's return from an overseas military deployment. The parents were not married, but lived together for a few months until permanently separating in May 2010. Although the mother and child stayed in the greater Yakima area, the father moved around. He lived for a time in Spokane, then back in Yakima during 2013-2014, and then in Alaska for three years.

The father's last physical visit with the child occurred in February 2011, and the one occasion when he briefly spoke on the telephone with the child was in 2013. Over a seven year period he sent the child six birthday cards and six Christmas cards.

The mother married another man, E.J., in 2012 after a year of living with him. J.H.-I is a special needs child whose social development lags behind her chronological

development. She does not know J.I. The child and E.J. bonded quite well and the child referred to him as "father."

The mother brought an action to establish a parenting plan in 2011, an action that angered the father. He represented himself in court. The judge entered a plan by which the father would have a Sunday afternoon in Ellensburg supervised by the child's maternal grandfather. J.I. did not exercise his visitation rights, feeling uncomfortable with the location.

In early 2017, he reached out to a dispute resolution center, but learned it did not consider visitation an appropriate subject for their services. J.J. and E.J. then filed this action to terminate the father's parental rights in June 2017. The petition cited the father's absence from the child's life and argued that it was in the child's best interest for E.J. to be the legal father.

The matter proceeded to bench trial, with both parties represented by counsel. After considering the evidence described above, the court found that E.J. had performed the role of father to the child. The court concluded that J.I. had failed to perform his parental duties and therefore was an unfit parent. The court also concluded that the child's best interests were served by terminating the father-child relationship and allowing E.J. to adopt her.

J.I. promptly appealed to this court. Counsel was assigned to represent him. A panel considered his appeal without conducting oral argument.

2

ANALYSIS

Assigning error to numerous findings, J.I. argues that the evidence does not support the determination that he failed to perform his parental duties and, therefore, it was premature to decide that it was in the child's best interests to terminate the parental relationship. We address the parental duties issue before turning to the best interest of the child.

*Parental Duties*

The father challenges the trial court's conclusion that he failed to perform parental duties as well as four related factual findings. The conclusion was based by findings supported by sufficient evidence.

The governing statute provides in pertinent part:

> the parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

This statute requires the petitioner to prove by clear, cogent and convincing evidence that termination is warranted. *In re Adoption of McGee*, 86 Wn. App. 471, 473, 937 P.2d 622 (1997). The parental fitness determination is a threshold issue that must be resolved by the trial court before the court may consider the best interest of the child. *In*

3

No. 36241-8-III
*In the Matter of the Interest of J.A.H.-I*

*re H.J.P.*, 114 Wn.2d 522, 531, 789 P.2d 96 (1990). It is considered a jurisdictional requirement. *Id.*; *In re Pawling*, 101 Wn.2d 392, 400, 679 P.2d 916 (1984).

> In assessing the performance of parental duties, courts look at five factors:
>
> (1) Express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). With these elements in mind, the court must also examine the parent's behavior and not merely stated intentions and desires. *McGee*, 86 Wn. App. at 480.

We review the trial court's factual determinations for substantial evidence. *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). "Substantial evidence" is sufficient evidence to persuade a fair-minded person of the truth of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Conclusions of law are reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We defer to the trial court's credibility determinations; we will not reweigh evidence even if we would have resolved conflicting evidence differently. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Stated another way, an appellate court is not in a position to find persuasive evidence that the trier of fact found unpersuasive. *Quinn*, 153 Wn. App. at

4

717. In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963).

J.I. contends that he did not exercise visitation due to an earlier threat allegedly issued to him by the grandfather who was to supervise visitation. J.I. argues that two findings that suggest the "alleged" threat was "insufficiently substantial" to justify his failure to exercise visitation are not supported by the evidence. J.I. also makes a similar argument concerning findings (1) he did not have contact information for the mother's father, (2) he did not visit because he was unhappy with the ruling, and (3) the court's recognition that many people represent themselves in Yakima County child visitation actions. We need discuss these matters only briefly because none of these findings was of particular significance.

J.I. contends that he was threatened during a phone call, but both the grandfather and the mother denied the allegation. The trial court did not find that there was a threat, but only ruled that the alleged threat—"it wouldn't take an army for him to come after me"—was not a substantial one. The statement was not directed at the father's exercise of visitation and did not amount to a threat of bodily harm. The testimony amply supported the findings. The other findings are of even less significance. The finding that the father claimed he did not have contact information for the grandfather was erroneous, but inconsequential. The finding that J.I. was unhappy with the court's ruling was well

supported. J.I. threatened to drop out of the child's life if the mother went to court and then did so. Finally, the finding that many people represent themselves in visitation cases is one within the personal knowledge of the trial judge. It, too, was supported by substantial evidence.

These findings were of little moment, however. The essence of the court's conclusion that J.I. did not perform his parental duties was overwhelmingly supported by his lack of involvement in the child's life. After 2011, there was no physical contact with the child and only one single telephone call. The remaining communication consisted of an annual card in the mail. The record is devoid of any showing of love and affection for the child, concern for the child's wellbeing, or any efforts the father made to provide guidance to the child. In short, the *Lybbert* factors weigh heavily in favor of the court's determination that J.I. did not live up to parental obligations.

Against the failure to parent, J.I. can only argue that he was often unemployed or employed out of state, leaving him limited opportunities to support the child. However, even assuming that he provided the maximum child support that he could, he has no legitimate excuse for otherwise dropping out of the child's life.

The court did not err in concluding that the father failed to perform his parental duties. Clear, cogent, and convincing evidence supported the determination.

*Best Interests of the Child*

J.I. also argues that the court's best interests of the child conclusion was premature because he was a fit parent and also was not supported by the evidence. In light of our resolution of the first issue, the conclusion was not premature. Accordingly, we consider J.I.'s challenges to the evidence.

The best interests of the child standard must be established by clear, cogent, and convincing evidence. RCW 26.33.120. Because of the high standard of proof, "the evidence must be more substantial than in the ordinary civil case" determined by the preponderance of the evidence standard. *In re Hall*, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). Whether termination is in the best interest of a child is based on the particular facts and circumstances of each case. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 572, 815 P.2d 277 (1991).

Here, J.I. challenges five findings, including two that state the stepfather was "for all intents and purposes" the child's father and that it would be traumatic for her to learn J.I. was her father. Two other challenged findings noted that J.I. paid child support when it was collected by the State, with one finding indicating that was the only time it was paid. The other challenged finding stated that J.I. did not visit the child and that there was no parenting plan prior to September 2010. We will briefly note these findings in reverse order.

The challenge to the visitation finding is based on evidence that J.I. and his brother did rent a hotel room and meet with mother and child in July 2010. However, the father did not testify to ever speaking with the child. According to the mother, the father spent the entire visit trying to get her to reunite with him and may not have even seen the child. That testimony allowed the court to conclude J.I. did not visit his child during that time frame.

The findings related to child support also are supported by the evidence. The mother did testify that support was received from the State when J.I. was employed. There was no testimony that J.I. ever paid support voluntarily rather than through the State's collection process. Thus, the two challenged findings are supported by the evidence.

The two critical findings involve the role of the stepfather in the child's life and her attachment to him. The gist of J.I.'s challenge to these two findings is that "father" means only the biological father. That challenge does not undermine the factual support for the court's finding that the stepfather was the father "for all intents and purposes." E.J. actively took on the task of raising the child and developed a close relationship with J.H.-I. The record contains extensive discussion of the stepfather's involvement in raising the child. The evidence very amply supported the determination that he was the father "for all intents and purposes." He was the only one who stepped up to perform that role—and he did it well.

The other challenged finding is that the child would be traumatized upon learning that E.J. was not the father. There was evidentiary support for that finding. The mother testified that it would be traumatic for the child to learn that the stepfather was not the father and that news would lead to the child losing trust in both J.J. and E.J. The mother's testimony supported the factual finding.

These two findings are at the heart of the trial court's best interests of the child ruling. In termination proceedings, courts recognize that stability and mental health are important for a child's wellbeing and development. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 29-30, 188 P.3d 510 (2008). An individual who lives with a child may become the de facto parent to the extent that individual should be granted legal recognition. *Id.* at 28. For instance, in *M.R.H.*, the court determined the adoption of two children by their foster parents was in their best interest. *Id.* The biological parent had no contact with the children for over two years and made no substantial effort to regain custody. *Id.* at 28-29. Meanwhile, the children were bonded to the foster parents and expert testimony found the children would experience mental harm if the biological parent retained custody. *Id.*

The absence of J.I. from his child's life was for a much longer period than that in *M.R.H.* While J.I. played no meaningful role in the child's life, E.J. provided significant parenting to the extent that he was the only father figure known to the child. The child and stepfather had bonded and it was important to the child's future development to have E.J. performing the role of father. As in *M.R.H.*, here the evidence also supported the

9

view that it would be psychologically damaging to the child if the biological father retained parental rights and interceded in the child's life.

The stepfather was the only father known to the child. Clear, cogent, and convincing evidence supported the trial court's determination that it was in the child's best interest for E.J. to assume the legal role of father. The court did not err in making that determination.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.