
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of | ) ) ) | No. 35707-4-III |
| BRIAN CONRADI, | ) ) | |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| and | ) ) | |
| TATUM WEBER, | ) ) | |
| Respondent. | ) | |

KORSMO, J. — Brian Conradi appeals the child custody and visitation schedule set by the trial court, primarily arguing that the parental bonding assessment process was tainted and that the evidence supported awarding primary custody to him rather than the mother. We affirm.

FACTS

Mr. Conradi and Ms. Tatum Weber met in California in 2011, and began dating. Their son, RC, was born the following year. In October 2012, the family moved to Bellevue, Washington. The following year, they moved to Kirkland, and then moved to Spokane in October 2014. Conradi and Weber never married. In August 2015, Weber

moved to California and took RC with her. Conradi stayed in Spokane, but visited the child in California.

In early November, Weber sought an order establishing child support. Conradi then filed for a parenting plan in Spokane County Superior Court. Weber did not respond and a default parenting plan was entered that made Conradi the primary custodian of RC. On February 26, 2016, the Department of Social and Health Services ordered that Conradi pay child support to Weber and that the parents share health care and medical expenses for RC. Two months later, the superior court vacated its parenting plan and the parties sought a new plan.

A series of motions ensued, including multiple revision requests. Ultimately, Judge Julie McKay ordered that a bonding assessment be conducted; the parties selected Amanda Clemons to perform the assessment. Clemons spoke with both parents, observed them interact with RC, and assessed their parenting capabilities. As part of the assessment, she reviewed declarations and records supplied by Weber, some of which were not part of the court record and had not been supplied to Conradi.[1]

Upon learning from her report that Clemons had considered the materials supplied by Weber, Conradi moved to strike the assessment and have a different provider conduct a new bonding assessment. A commissioner granted that request, but Judge McKay

---

[1] The declarations were from Weber's family and asserted that she was the better parent to RC than Conradi.

reversed that order on revision. At the ensuing bench trial, Clemons provided her assessment and testified that while RC had bonded with both parents, his stronger bond was with his mother. Conradi called seven witnesses who testified that he was a capable and loving parent and was more involved in parenting RC than Weber was.

The court granted Weber primary custody of RC. Conradi was provided with regular visitation with RC in Spokane and was permitted to visit the child in California during his time off. The court also entered a standard support order that made Conradi responsible for 67 percent of the support obligation and Weber the remaining 33 percent. The court also ordered that the parents share the costs of RC's long distance travel, but that Conradi would pay his own costs to visit the child in California.

Conradi timely appealed to this court. A panel considered the appeal without hearing argument.

ANALYSIS

This appeal challenges the trial court's refusal to order a new bonding assessment, the award of primary custody to the mother, and the division of travel costs. We address the three issues in the order stated.

*Bonding Assessment*

Conradi argues that Clemons erred in considering ex parte materials and that a new assessment should have been conducted by a different provider. He cites no relevant authority in support of his argument.

3

As pertinent here, an ex parte communication is one between one party to an existing proceeding and a judge or judge's representative.[2] *State v. Watson*, 155 Wn.2d 574, 579-580, 122 P.3d 903 (2005) (citing examples). Judges may not engage in ex parte communications. CJC 2.9.

Treating Clemons as the court's representative, Conradi argues that Weber engaged in improper ex parte communication by providing the declarations and records to Clemons without notice to him. The case he cites in support of his argument is inapposite. *Reddy v. Karr*, 102 Wn. App. 742, 9 P.3d 927 (2000). In a dissolution case raising child custody issues, the husband had secretly recorded a conversation between his wife and son and then shared that recording with the social worker assigned to the case. *Id*. at 746. The social worker recommended that the husband receive primary custody, but the trial court awarded primary custody to the mother. *Id*. at 747. The mother then sued the social worker for negligence. *Id*. Division One held that the social worker enjoyed quasi-judicial immunity because she was appointed by and acted for the court. *Id*. at 744, 753. The court did not address whether the social worker's consideration of the recording constituted an ex parte communication.

---

[2] The term ex parte communication also is applied to communications, made without notice to the other side, between attorneys for one side and witnesses or experts involved in the litigation. *E.g.*, *Matter of Firestorm 1991*, 129 Wn.2d 130, 137, 916 P.2d 411 (1996) (opposing side's expert witnesses); *Loudon v. Mhyre*, 110 Wn.2d 675, 682, 756 P.2d 138 (1988) (opposing side's physician).

*Reddy* just does not speak to the issue in this case. Not only was there no discussion about ex parte communications in *Reddy*, the social worker in that case was appointed by the court to make the evaluation. Here, Clemons was selected by the parties, albeit from a short list of evaluators offered by the court. *Reddy* simply does not assist Mr. Conradi in this case.

It was the intention of the parties and the court that Clemons gather the information she needed to make an informed recommendation about parent-child bonding. That necessarily meant that she would be observing and talking with each parent apart from the other. We seriously question, but need not decide, whether evidence gathering by an evaluator ever would implicate the prohibition on ex parte communications. Clemons was not a judicial actor and communications with her did not implicate the doctrine under these facts.

Accordingly, Mr. Conradi has failed to demonstrate error, let alone that his trial was unfair. This argument is without merit.

*Award of Primary Custody*

Mr. Conradi next contends that the trial court erred in awarding primary custody to Ms. Weber, arguing that the weight of the evidence favored him. This court does not reweigh evidence. Properly viewed, the evidence supported the trial court's decision.

Appellate courts review permanent parenting plans for abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). Discretion is abused

when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). In establishing a parenting plan, the trial court must consider seven factors set out in RCW 26.09.187(3)(a). Of those factors, the court must give the greatest weight to the first factor—the strength of the bond between parent and child. RCW 26.09.187(3)(a)(i).

An appellate court reviews a trial court's decision following a bench trial to determine whether substantial evidence supports any challenged findings and whether the findings support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318 (2009). "Substantial evidence" is sufficient evidence to persuade a fair-minded person of the truth of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Conclusions of law are reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We defer to the trial court's credibility determinations; we will not reweigh evidence even if we would have resolved conflicting evidence differently. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Stated another way, an appellate court is not in a position to find persuasive evidence that the trier of fact found unpersuasive. *Quinn*, 153 Wn. App. at 717. In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963).

6

The evidence supported the decision to award primary custody to Weber. The parents lived in different states, requiring the child to live with one parent as the primary custodian. The record reflects that both parents were willing and able to parent and had good relationships with the child. Nonetheless, Clemons testified that the child's relationship with Weber was stronger. Weber did not work and provided the majority of the parenting functions when the couple was together in the child's earlier days. Understandably, she had a strong relationship with RC.

It was for the trier of fact to determine how much weight to give the testimony of Conradi's witnesses. We do not reweigh the evidence. The trial court was free to credit the testimony of Clemons over that presented by Conradi. Accordingly, substantial evidence supported the decision to award primary custody to Weber.

The evidence supported the bench verdict.

*Travel Expenses*

Lastly, Conradi argues that the trial court erred in failing to divide travel expenses, including those for his visits to California, in accordance with the child support ratio. Since he did not object at trial, he has not preserved his argument.

Appellate review normally does not extend to arguments not raised in the trial court. RAP 2.5(a). Courts, however, have discretionary authority to consider issues of manifest constitutional error that were not raised in the trial court, provided that an adequate record

exists to consider the claim. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). The issue presented here is not of constitutional magnitude.

RCW 26.19.080(3) requires long-distance travel expenses to be shared in the same proportion as the child support obligation. *If* the parenting plan violated that statutory requirement, a question we do not decide, the issue is not before us because it was not presented to the trial judge. Because it is a question governed by statute, Mr. Conradi's failure to raise the claim in the trial court precludes our review of it here. This issue was not preserved.

Lastly, Ms. Weber asks that we grant her attorney fees for responding to this appeal. We have discretion to do so. RCW 26.09.140; RAP 18.1, 18.9. However, we decline to award fees in this case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____        _____
Fearing, J.                                              Lawrence-Berrey, C.J.